THE STATE OF NEW JERSEY, PLAINTIFF-APPELLANT, v. ALBERT TASSIELLO, JOHN HAGAN AND JAMES H. HAYES, DEFENDANTS-RESPONDENTS.

Argued December 18, 1962—Decided February 18, 1963.

284

Mr. *William C. Brudnick,* Assistant Prosecutor of Bergen County, argued the cause for the plaintiff-appellant (*Mr. Guy W. Calissi,* Bergen County Prosecutor, attorney for and of counsel with plaintiff-appellant; *Mr. William C. Brudnick,* on the brief).

Mr. *Nino D. Caridi* argued the cause for the defendants-respondents.

The opinion of the court was delivered by

PROCTOR, J.   The defendants, Tassiello, Hagan, and Hays, were indicted for breaking and entering with intent to steal, and for conspiracy to commit that crime. The Bergen County Court entered judgments of conviction based upon jury verdicts against Hagan and Tassiello on the charge of breaking and entering with intent to steal, and against all three defendants on the conspiracy charge.

On their appeal to the Appellate Division, the defendants argued (1) that the State failed to make out a *prima facie* case against them; (2) that the trial court failed to exclude two confessions of the defendant Hayes, which incriminated the other defendants as well; and (3) that the State's cross-examination of Hayes concerning prior convictions was improper and prejudicial. The Appellate Division found the first point to be without merit, but reversed the convictions on the second, holding that the failure to exclude the confessions was prejudicial to all three defendants. In view of its reversal, the court found it unnecessary to pass upon the defendants' third point, but admonished the State not to repeat at the new trial the questioning of Hayes concerning prior convictions. 75 *N. J. Super.* 1 (1962).

We granted the State's petition for certification. 38 *N. J.* 315 (1962).

The facts are fully set forth in Judge Foley's opinion in the Appellate Division. Briefly, the State's case showed that late in the evening of September 8, 1960, the defendants were drinking in Seidel's Bar and Grill in Ridgefield. At about 2:00 A. M. (September 9) they walked out and drove away when the bartender closed the establishment. Shortly thereafter, Patrolman Stoltenberg apprehended Hayes outside the rear of the premises and, after Patrolman Amicosante joined him in response to his call, Tassiello and Hagan were found inside the tavern. A window leading to the men's room had been opened and Hayes' automobile was found parked about a block away on a side street. The defendants were placed under arrest and taken to the Ridgefield police headquarters, which was a short distance away.

During the trial, the defendants contested the admissibility of written statements which Hayes and Hagan had given to the police later in the morning of their arrest, contending that the statements had been coerced by police brutality. Patrolmen Stoltenberg and Amicosante testified to the circumstances of the defendants' arrest. Amicosante further testified that when Stoltenberg took the defendants to head-

quarters, he remained at the tavern for a short time and then resumed his regular patrol; that thereafter he had nothing to do with the defendants. The State next called Patrolman Edward Gallagher, assistant in charge of the records and identification bureau, who testified that on September 9, 1960, shortly before 7:30 A. M., he came on duty at police headquarters and interviewed successively Hayes, Hagan and Tassiello. By his testimony the State intended to lay a foundation for admitting into evidence two signed confessions taken by him from Hayes, one in Hayes' handwriting and the other in typewritten question-and-answer form, and a signed confession taken by him from Hagan in typewritten question-and-answer form.[1] At this point defense counsel interposed his objections and the trial court proceeded to conduct a preliminary hearing on the issue of voluntariness in the absence of the jury.

At this hearing, the direct testimony of Gallagher was to the effect that Hayes and Hagan gave him the statements at the time of the interviews mentioned above. Hayes gave Gallagher his handwritten statement at about 7:30 A. M. and his typed statement immediately thereafter; Hagan's statement was taken about an hour later. On cross-examination, Gallagher testified that the statements given him by Hayes and Hagan were voluntary, although the defense counsel's questioning suggested that they were the result of coercive conduct on the part of the police. At the conclusion of this cross-examination, the State offered the confessions in evidence. It appears from the record that the defense made no further attempt at this point to contradict the testimony of Gallagher. The jury was recalled and the confessions were admitted into evidence over the defendants' objection. The judge then permitted the defense to cross-examine Gallagher

---

[1] An unsigned statement made by Tassiello was not involved in this inquiry. That statement, exculpatory in content, was offered by the State and initially objected to. Later, the objection was withdrawn and defense counsel offered it in evidence and read it to the jury.

in the jury's presence, after which the prosecutor read the three statements to the jury. With respect to the contents of these confessions, it is enough to say that each incriminated not only the particular declarant but his codefendants as well. However, no instructions were given to the jury when the confessions were read that each was evidential only against the declarant who made it.

The State then called Magistrate Cummins who testified that the defendants were arraigned before him at 6:00 P. M. on September 9. He said that they made no complaints to him about the conduct of the police, and that he did not notice any evidence of injury on their faces or hands.

The State's case concluded with the testimony of the bartender from Seidel's, alluded to above, to the effect that the defendants had been drinking at his bar until closing time on the morning of September 9, and that they walked out in front of him and drove away as he locked up the place for the night.

When the defendants opened their case, the voluntariness of their statements was affirmatively contested for the first time. They called Patrolman Stoltenberg and attempted to elicit from him that he had beaten and otherwise mistreated each of them before the confessions of Hayes and Hagan were taken. However, Soltenberg categorically denied that either he or anyone else in his presence mistreated the defendants in any way.

Dr. Michael Sarla, the Bergen County jail physician, testified that he saw Tassiello on September 12, 1960, at the county jail, and that Tassiello "said that he had pain in the lower right chest and upper right shoulder. That was four days duration since he had been beaten up." A chest X-ray of Tassiello, ordered by Dr. Sarla, revealed that Tassiello had suffered a fractured rib. The doctor also said that Tassiello was under his care until he was released on bail on November 22, and that he gave him medical treatment on ten occasions. He further testified that Hagan came to him on September 12, 1960, "because of pain in the chest and shoul-

der and left knee, and also of four days duration, and also following a beating up." An X-ray of Hagan revealed no broken bones, but the doctor said his examination disclosed "several black and blue marks on the chest and showed a discoloration," and that there were other black and blue marks on his side and back. The doctor said he did not examine Hayes until September 16, at which time "his statement was that he also had been beaten up" and that he complained of "pain around his chest and frequency of urination." Apparently, the doctor observed no marks on Hayes at the time of his examination.

The defendants each denied having any intent to steal. In essence, their testimony was that they had set out from Keansburg to drive to New York City; that during the course of the trip they decided to visit Tassiello's sisters who lived in the Ridgefield area; that during the day they stopped in several bars, including Seidel's; that later in the evening they returned to Seidel's and continued drinking; that after Tassiello and Hayes left at closing time, they realized that Hagan was not with them and they returned to Seidel's to retrieve him; that Hayes went to the rear of the premises to relieve himself while Tassiello knocked on the side door of the tavern; that Hagan, who had fallen asleep in the tavern, opened the door to let Tassiello in and then went back to look for a shoe he had lost. At that point, the police arrived.

On the issue of the voluntariness of the confessions, the defendants testified that they were all severely beaten and otherwise physically and psychologically coerced by the arresting and examining police officers, Stoltenberg, Amicosante, Edward Gallagher and others. They each said that this mistreatment commenced shortly after they were taken into custody and continued until some five hours later when confessions were extracted from Hayes and Hagan. The details of their testimony need not be repeated here as they are set forth at length in the Appellate Division's opinion, 75 *N. J. Super.*, at *pp.* 8–10.

In rebuttal, the State called Captain John T. Gallagher, who testified that he was at headquarters most of the time that the defendants were in custody there, and was in charge of the investigation. He denied seeing any officer inflict punishment on any of the defendants, and said that none of the defendants had complained to him of mistreatment. The State also offered the testimony of the warden and two employees of the Bergen County jail to the effect that when the defendants were brought there at 8:00 P. M. on September 9, no evidence of physical mistreatment was noted. The State also introduced in evidence three photographs of each defendant, one of which was taken at the Ridgefield police headquarters shortly after the defendants were arrested, and two of which were taken on the morning of September 10 at the Bergen County Sheriff's office. The photographs are of little value, however, since only the heads and necks of the defendants are exposed, whereas the injuries claimed to have been sustained by each defendant were to parts of his body not shown.

At the close of all the evidence and in the absence of the jury, the defense moved to strike the confessions of Hayes and Hagan on the ground that they were not voluntarily given but were induced by coercion and physical violence. At the commencement of the argument on these motions, the trial court addressed defense counsel:

"Let's confine ourselves with each one.

Tell me where the evidence is *preponderant* that Hayes was 'beaten up' by the police." (Emphasis added.)

After argument, the court denied the motion to strike Hayes' confessions without stating its reasons. When defense counsel asked the trial judge whether, when considering the motion, he had formed an opinion on the evidence as to voluntariness, the judge said:

"You are not going to know from me. I think that is a question for the jury to determine and I am not going to tell you. *I am not a trier of the facts.*" (Emphasis added.)

The court then heard argument on the voluntariness of Hagan's statement. In granting the motion to strike it, the court said:

"With reference to Hagan, I don't like police brutality. I think it is abominable and un-American. I am not here to determine the innocence or guilt of any of these three defendants, but I am here to pass upon the legal sufficiency or the legality of any evidence, but with respect to the purported admissions of Hagan's statement in evidence which has been marked by the State as S-1 in evidence, the court has determined to reject the same and to strike it from the record."

The court then recalled the jury and told them to disregard Hagan's confession.

Later, in the course of its general charge, the court instructed the jury, for the first time, that Hayes' confessions were not "binding" on his codefendants, Hagan and Tassiello, and that they should not be considered as proof against them.

On the defendants' appeal, the Appellate Division held that the trial judge erroneously admitted Hayes' confessions in evidence "either because the court mistakenly concluded that the burden fell upon this defendant to offer evidence preponderating in his favor, or because the court was of the view that Hayes' testimony was so lacking in credibility as to be worthless to combat the testimony offered by the police officers," and that "Hayes' lack of truthfulness was not necessarily dispositive of the issue if there was other acceptable evidence, or inferences to be drawn therefrom from which it could have been reasonably concluded that he was *in fact* beaten." The Appellate Division reviewed the facts as to the voluntariness of Hayes' confessions and concluded:

"In the circumstances as we have described them hereinabove, we find no plausible explanation for the rejection of the testimony of the police as it bore on the Hagan confession, and acceptance of the testimony of the same men as it related to the practically contemporaneous statements of Hayes. When there is added to this the strong probability that Tassiello was also physically abused by these persons at or about the same time, we find the inference to be inescapable that Hayes was maltreated, and that his confessions

resulted therefrom, and should, therefore, have been stricken from the record." 75 *N. J. Super.*, at *p.* 15.

The Appellate Division further held that, notwithstanding the trial court's charge to the jury that the statements of Hayes were to be held against him alone, the erroneous admission of Hayes' confessions in the circumstances was prejudicial to Hagan and Tassiello.

On this appeal, the State first argues that the Appellate Division failed to recognize that Hayes' confessions "had already been admitted in evidence and that the burden of proof as to voluntariness had been successfully carried by the State in view of defense failure to prove the contrary." It further contends that when the defendants introduced evidence of involuntariness upon which reasonable men could differ, the only duty of the trial court was to submit the issue of voluntariness to the jury.

The State cites *State v. Bowden*, 62 *N. J. Super.* 339, 356 (*App. Div.* 1960), certif. denied *sub nom. State v. Duffy*, 33 *N. J.* 385 (1960), wherein the court found that the inference of involuntariness of a confession was "compelled by a *substantial preponderance of the evidence.*" (State's emphasis.) It also cites *State v. Petrolia*, 21 *N. J.* 453, 459 (1956), wherein the court found a confession to be involuntary by "*a marked preponderance of the evidence.*" (State's emphasis.)

It is well-settled that before the State may introduce a confession into evidence, it must first carry the burden of proving "that the defendant's will had not been overborne and that the fundamental fairness requirement of the due process clause had not been violated." *State v. Fauntleroy*, 36 *N. J.* 379, 395 (1962). See *State v. Driver*, 38 *N. J.* 255, 282 (1962); *State v. Smith*, 32 *N. J.* 501, 559–560 (1960); *State v. Tune*, 13 *N. J.* 203, 215 (1953). Initially, this burden must be met by the State in the preliminary hearing on the question of the admissibility of the confession, which the trial judge in his discretion may hold either in or out of the jury's presence. *State v. Walker*, 33 *N. J.* 580, 592

(1960). The trial judge is under a "heavy responsibility" to weigh the evidence and make his own finding of fact upon the issue of voluntariness. *State v. Fauntleroy, supra,* 36 *N. J.,* at *p.* 395; *State v. La Pierre,* 39 *N. J.* 156 (1963). The confession is admissible only if the State has proved to the trial judge that it is voluntary. *State v. Smith, supra,* 32 *N. J.,* at *pp.* 559–560. But, the State's burden does not end with the preliminary hearing; the judge's decision to admit the confession is always subject to revision if, at a later stage of the trial, the proofs satisfy him that the State has not continued to carry its burden. Where this situation occurs, the trial judge must strike the confession from the record.[2] *State v. Smith, supra,* at *pp.* 559–60. At the end of the case, if the judge is still persuaded that the State has carried its burden, but that the evidence is such that reasonable men could differ whether the confession was voluntary, then the judge should submit the confession to the jury with instructions that they must first consider that issue under the controlling legal principles and must disregard the confession if they find the State has not proved it to be voluntary. *Ibid.* At no time, either before the judge or the jury, is a defendant required to show that the evidence is "preponderant" in favor of involuntariness.

---

[2] The orderly conduct of a criminal trial requires as far as possible that *all* the available evidence, both the State's and the defendant's, bearing on the issue of *voluntariness* be produced at the preliminary hearing. The determination of the trial judge whether to admit the confession into the case is based on that evidence, and such evidence should not be diffused throughout the whole trial. Thus, unless the trial judge in his discretion decides that the interests of justice require otherwise, a defendant, having failed to avail himself of the appropriate opportunity, will not be permitted to produce evidence on this *issue* at a later stage of the case. In the present case, the trial judge, without objection by the State, permitted Hayes and Hagan to wait until the defense opened before they produced evidence as to the involuntariness of their confessions. Though we disapprove of the procedure, the evidence of involuntariness came into the case and we must review the entire record. See *State v. Smith,* 32 *N. J.* 501, 540 (1960).

The cases of *Bowden* and *Petrolia* are not inconsistent with the above principles. In each case, the court was merely reflecting upon the state of the evidence and not setting forth a rule of law as to the allocation of the burden of proof.

However, we need not decide whether the trial judge proceeded under a view of the law inconsistent with the above discussion, since we are in agreement with the Appellate Division's finding of fact that the State failed to prove the voluntariness of Hayes' confessions.[3]

The scope of review by an appellate tribunal over rulings on the admissibility of confessions was set forth by Mr. Justice Hall in *Smith,* 32 *N. J.,* at *p.* 549, thus:

"[W]e will carefully review and weigh all the evidence on the question and determine its adequacy and the correctness of the determination in the same fashion as we do in the case of an appealed judgment in a non-jury criminal matter, giving full regard, of course, to the opportunity of the trial court to judge of the credibility of the witnesses."

See *R. R.* 1:5–4(b). This broad scope of review was further emphasized by Mr. Justice Hall in *Smith,* where he cautioned:

"We must ever be alert, however, that recognition [of the paramount requirements of federal due process] is not mere lip service. Review has to be both wide and penetrating to make sure these constitutional rights have not been trampled upon." *Id.,* at 544.

See also, *State v. Driver, supra,* 38 *N. J.,* at *p.* 282.

---

[3] If the trial judge erroneously failed to make his own determination of fact on the question of voluntariness of Hayes' confessions, then the Appellate Division's finding, with which we agree, amounts to the only judicial determination upon that issue. In *State v. La Pierre,* 39 *N. J.* 156 (1963), we left open the question whether the additional protection we intended for the accused in *Smith,* of having the trial judge make a preliminary determination on the question of voluntariness, can be afforded by an appellate tribunal's finding upon that issue. Since we hold that Hayes' confessions were inadmissible, he is not deprived of such additional protection. Hence, we again defer the question left open in *La Pierre* to a case where it is squarely presented.

Notwithstanding the above broad scope of review, the State argues that the Appellate Division failed to give due consideration to the trial judge's evaluation of the credibility of the witnesses.

■■ While a reviewing court must give due regard to the opportunity of the trial court, who sees and hears the witnesses, to judge of their credibility, the reviewing court may not uphold the submission of a confession to the jury unless the totality of the evidence shows that the defendant's constitutional rights have not been violated. It is true that there was no objective evidence of injury on Hayes' body, and his account of the physical abuse to which he was subjected seems greatly exaggerated. These factors clearly impaired his credibility and therefore his testimony may be accorded little weight. Nevertheless, his confession should not be admitted if the State's *prima facie* showing of voluntariness is offset by other, acceptable evidence from which it may logically be inferred that his confessions were the result of physical abuse. See *State v. Bowden, supra,* 62 *N. J. Super.,* at *p.* 356.

■ The trial judge rejected Hagan's confession on the ground that it had been extracted as a result of police brutality. The State does not suggest that he was wrong in so doing. The physical violence suffered by Hagan was inflicted by the same police officers who, in the same building and at practically the same time, interrogated Hayes and Tassiello. Furthermore, there was evidence that Tassiello had been beaten and had suffered a broken rib while in the custody of these officers. Although the trial judge did not intimate whether he thought Tassiello's injuries were the result of police brutality, we think that, in the circumstances, such was probably the case. The three defendants were booked at the same time, for the same offenses, arising out of the same incident. In these circumstances, it cannot reasonably be supposed that the police officers, during their interrogations, would treat one of these defendants more benignly than the other two. The trial judge apparently gave controlling sig-

nificance to the police officers' testimony that Hayes was not mistreated, notwithstanding that the judge implicitly indicated his disbelief of the same officers' testimony that no physical violence had been inflicted on Hagan. We can find no reasonable explanation for this ambivalence.

Moreover, we think the record contains substantial evidence that Hayes' confessions were the product of psychological coercion. Patrolman Stoltenberg testified that each defendant was interrogated in a room not more than 16 to 20 feet away from the cells where the other two defendants awaited their turn to be questioned. And part of the time, according to the testimony of the police, Hayes was handcuffed to a bench in the booking room which adjoined the record room where the questioning took place. It is reasonable to assume that Hagan and Tassiello cried out in pain when they were beaten by the police, and furthermore, it is reasonable to infer that their cries carried the short distance to the places where Hayes was kept waiting. This inference directly supports Hayes' testimony that he heard both Hagan and Tassiello "screaming" for long periods of time while he was kept handcuffed to the bench in the booking room. Although the trial judge discounted Hayes' testimony, as he was entitled to do, such parts of Hayes' testimony as were directly supported by other credible evidence should not have been completely ignored. The psychological effect of hearing the cries of pain from his two confederates while they were being violently treated by police officers, in the middle of the night and in a strange town, probably was just as coercive on the will of the defendant Hayes as a beating would be.

Since the State's proof of voluntariness rested upon the testimony of the police officers, whose credibility was severely impeached, and there was other evidence from which logical inferences could be drawn that Hayes was physically and psychologically coerced, we hold that the State failed to carry its burden of proving that Hayes' will was not overborne and that his confessions were "the product of an essentially free and unconstrained choice" by him. See *Culombe v. Connec-*

*ticut*, 367 *U. S.* 568, 602, 81 *S. Ct.* 1860, 1879, 6 *L. Ed. 2d* 1037, 1057 (1961); *State v. Driver, supra,* 38 *N. J.,* at *p.* 285.

Although there was sufficient other evidence of guilt, the submission of Hayes' confessions to the jury cannot be considered harmless, since no one can tell what part they played in the jury's determination. See *State v. Petrolia, supra,* 21 *N. J.,* at *p.* 460. We think the Appellate Division was correct in holding that the trial judge should have struck Hayes' confessions from the record, and that his conviction must therefore be reversed.

Finally, the State contends that even if Hayes' confessions were improperly submitted to the jury, this would not constitute reversible error as to Hagan and Tassiello. It argues that the trial court instructed the jury that Hayes' statements should not be considered as evidence against the other defendants, and since there is no clear proof to the contrary, it must be assumed that the jury abided by those instructions, citing *State v. Curcio,* 23 *N. J.* 521 (1957).

It is, of course, undisputed that Hayes' confessions were not admissible evidence of guilt against Hagan and Tassiello. Courts and commentators have recognized that the admission of one defendant's confession in a joint trial creates the possibility of prejudice to the other defendants if they are implicated by the confession. *Blumenthal v. United States,* 332 *U. S.* 539, 559–560, 68 *S. Ct.* 248, 257, 92 *L. Ed.* 154, 169 (1947); *Nash v. United States,* 54 *F. 2d* 1006, 1007 (2 *Cir.* 1932); Note, 72 *Harv. L. Rev.* 920, 989–990 (1959); Note, 56 *Colum. L. Rev.* 1112 (1956). Nevertheless, it is generally recognized that considerations arising out of the due administration of criminal justice frequently require that several defendants be tried jointly and that the confession of one defendant be admitted into evidence at such a joint trial where the circumstances are such that the jury can reasonably be expected to follow the court's admonition to disregard the confession as to the other defendants. *Delli Paoli v. United States,* 352 *U. S.* 232, 242, 77 *S. Ct.* 294, 300, 1 *L. Ed. 2d*

278, 285 (1957)[4]; *Blumenthal v. United States, supra;* 332 *U. S.,* at *p.* 560, 68 *S. Ct.,* at *p.* 257, 92 *L. Ed.,* at *p.* 169; *State v. Rios,* 17 *N. J.* 572, 585; *People v. Roxborough,* 307 *Mich.* 575, 585, 12 *N. W. 2d* 466, 470 (*Sup. Ct.* 1943); *State v. Hall,* 55 *N. J. Super.* 441 (*App. Div.* 1959). The importance of the timeliness of such an admonition was emphasized in *Delli Paoli v. United States, supra,* where it was said:

"* * * These declarations [*i. e.,* those admissible only as to the declarant] must be carefully and clearly limited by the court *at the time of their admission* and the jury instructed as to such declarations and the limitations put upon them. Even then, in most instances of a conspiracy trial of several persons together, the application of the rule places a heavy burden upon the jurors to keep in mind the admission of certain declarations and to whom they have been restricted and in some instances for what specific purpose." 352 *U. S.,* at *p.* 238, 77 *S. Ct.,* at *p.* 298, 1 *L. Ed.* 2d, at *p.* 283, quoting from *Lutwak v. United States,* 344 *U. S.* 604, 619, 73 *S. Ct.* 481, 490, 97 *L. Ed.* 593, 604 (1953). (Insertion the court's, but emphasis added.)

In the present case, the trial court gave no limiting instructions either at the time of the admission of the confessions or at any other time before the close of the evidence. It was not until the middle of the court's charge that the jury was told that Hayes' confessions were evidential against him alone and were not to be used to incriminate his codefendants. During the greater part of the four-day trial, Hayes' confessions, which contained damaging statements against Hagan and

---

4 In *Delli Paoli,* the majority of the court held that the admission in evidence of a confession of one defendant was not *per se* prejudicial to the others where timely and specific limiting instructions were given to the jury by the trial court. The majority was careful to point out several factors in the case which showed that the jury could reasonably be considered to have followed the trial court's instructions. Mr. Justice Frankfurter, whose dissenting opinion was joined by three other members of the court, said that where the confession of one defendant implicates the other defendants they should not be tried jointly, notwithstanding the limiting instructions of the trial court. See Comment, 24 *U. of Chi. L. Rev.* 710 (1957). *Delli Paoli* illustrates the delicate task of weighing the public interest in the efficient administration of criminal justice against the possibility of prejudice to codefendants at a joint trial.

Tassiello, were before the jury without restriction as to their evidentiary use. We gravely doubt that, in such circumstances, the trial court's belated instruction at the end of the case could erase from the jurors' minds the portrayal of the guilt of Hagan and Tassiello which was contained in Hayes' statements.

*State v. Curcio, supra,* relied on by the State, has nothing to do with the point we have been discussing. In that case, during the course of the trial, newspapers reported that Curcio, one of the defendants, had previously been convicted of crimes similar to the one for which they were then being tried. From the start, the judge cautioned the jury against reading newspaper accounts of the trial. On defendants' appeal, this court rejected their argument that they were prejudiced by the newspaper accounts, holding that it would not assume that the jury disregarded the trial court's instructions and read the accounts. In distinguishing *Curcio* from the present case, it is enough to say that in *Curcio* it was reasonable to expect that the jury would obey the court's instructions; in the circumstances of the present case, we doubt that any jury could perform the Herculean feat of isolating the effect of Hayes' confessions.

However, we need not decide whether, if it had been correct to submit Hayes' confessions to the jury, the lack of timely instructions standing alone would constitute prejudicial error in view of defense counsel's failure to object or to request such instructions at the time the confessions were admitted. See *State v. Stanford,* 90 *N. J. L.* 724 (*E. & A.* 1917). As we said above, even though the admission at a joint trial of a defendant's confession carries the possibility of prejudice to codefendants, countervailing considerations arising out of the due administration of criminal justice frequently require that several defendants be tried jointly and that a confession of one defendant be admitted, as long as the jury clearly understands its restricted use. *State v. Rios, supra,* 17 *N. J.,* at *p.* 585. But where, as here, Hayes' confessions had no right to be considered by the jury as evidence

against any defendant, and where even the minimal protection of proper limiting instructions was largely omitted, there are no such countervailing considerations to justify the possibility of prejudice to the codefendants, Hagan and Tassiello. Since these confessions should not have been used to convict Hayes, the defendant who made them, certainly the possibility, augmented by the lack of timely instructions, that the statements played a part in the convictions of Hagan and Tassiello requires the reversal of those convictions as well. See *United States v. Haupt,* 136 *F.* 2d 661, 672 (7 *Cir.* 1943); *cf. Anderson v. United States,* 318 *U. S.* 350, 63 *S. Ct.* 599, 87 *L. Ed.* 829 (1943). To do otherwise would be to penalize Hagan and Tassiello for the trial judge's error as to Hayes.

The judgment of the Appellate Division is affirmed.

*For affirmance*—Chief Justice WEINTRAUB, and Justices JACOBS, FRANCIS, PROCTOR and SCHETTINO—5.

*For affirmance as to Hayes and reversal as to others*—Justices HALL and HANEMAN—2.