81 N.J. Super. 518 (1963)
196 A.2d 245
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
JOHN J. CALLAGHAN, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued December 9, 1963.
Decided December 19, 1963.
*519 Before Judges GOLDMANN, KILKENNY and COLLESTER.
Mr. Mayer L. Winograd argued the cause for appellant.
Mr. C. William Caruso, Assistant Prosecutor of Essex County, argued the cause for respondent (Mr. Brendan T. Byrne, County Prosecutor of Essex County, attorney).
The opinion of the court was delivered by KILKENNY, J.A.D.
Defendant was found guilty in the municipal court of Newark of assault and battery, in violation of N.J.S. 2A:170-26. He was there given a 30 days' suspended jail sentence and fined $250. On his appeal to the Essex County Court there was a plenary trial de novo and he was again found guilty, the jail sentence was again suspended and the fine of $250 paid in the municipal court was ordered to be remitted. This is defendant's appeal from the judgment of conviction of the county court.
Defendant contends: (1) there was prejudicial error in the trial court's admission of an alleged oral statement made by him to a police officer in which he stated that he had *520 slapped the complaining witness; and (2) the evidence does not support a finding of guilt beyond a reasonable doubt. In order to put these issues in proper focus, it becomes necessary for us to summarize the evidence at the trial.
On April 14, 1963, about 10:30 P.M., James Mleziva was driving an automobile owned by a friend, Richard Smith, in a westerly direction along Raymond Boulevard in Newark. Riding with him in the front seat of this car were two other friends, David Hopler in the middle, and Robert Zatorski at the far right. Mleziva stopped his car because of a red traffic light at Pine Street. Defendant, who had been driving a Public Service bus immediately behind the car driven by Mleziva and in the same direction, also stopped for the light, left the bus with its passengers and appeared on the street on the driver's side of Mleziva's car. The incident which immediately followed was in dispute, Mleziva and his two passengers giving one version and defendant giving a contradictory version.
According to Mleziva, defendant pulled on the handle of his car and when he rolled down the window defendant yelled at him, "What, are you crazy kid, where did you get your license." Thereupon, in Mleziva's words, "all of a sudden one arm came in the car and grabbed me by the collar of the coat and the guy was hitting me across the face with the other hand." Following this, according to Mleziva, defendant then walked back to his bus and drove off. Mleziva noted the number of the bus and the license plate number. He then went to the Public Service building, ascertained the bus driver's identity and drove to the Third Precinct police headquarters, where he reported the incident and registered an oral complaint there with a police officer, named Leonardis.
The passengers, Hopler and Zatorski, testified to the same version as had been related by Mleziva.
Prior to the alleged assault and battery, there had been two near collisions between the Mleziva car and the bus. Mleziva claimed that he had been driving his car in the left lane while the bus was behind him in the right lane and that the bus *521 driver had attempted to pass him in order to get into the left lane ahead of him.
Defendant testified that Mleziva had been driving his car in a reckless manner, cutting in front of the bus and causing him to apply his brakes suddenly to avoid a collision. He was apprehensive for the safety of his passengers, and when both the car and the bus were halted by the red traffic light, he got out of the bus and went to the side of Mleziva's car. He denied that he tried to open the car door and that he had made the remark testified to by Mleziva and his passengers, but on the contrary stated that he called the occupants "stupid fools." He also denied touching or striking Mleziva in any way.
Defendant and Mleziva met on two occasions subsequent to the incident on the street referred to above. The first meeting was in the Public Service building and the second was at police headquarters. The purpose of both meetings was to come to some mutually agreeable settlement and to dissuade Mleziva from filing a formal complaint of assault and battery, which up to that time had not yet been filed. Defendant was apparently anxious to avoid any such proceeding and at the same time felt that Mleziva was using the threat of a formal complaint unduly in order to get money from him.
When defendant and Mleziva had failed to settle the matter during their second meeting at police headquarters, Detective John Bauman, who had been assigned to investigate the matter and had given the parties an opportunity to settle their differences and obviate a formal complaint, brought defendant in his office and began to type out an "arrest sheet." Defendant began to cry and again asked leave to confer with Mleziva and his request was granted. The parties then informed Detective Bauman that "everything was straightened out" and left headquarters with the understanding that they would telephone the detective several days later to inform him whether the matter had been definitely settled.
Subsequently, the detective phoned defendant and learned that a settlement had not been reached. A formal complaint *522 was then filed in the municipal court and the case was tried therein, with the result first noted above.
At the trial de novo in the County Court, Detective Bauman was asked by the prosecutor if he had had any conversations with the defendant with relation to the matter and, if so, to state what he had said to the defendant and what if anything the defendant had said to him. Defendant's attorney objected on the ground that "no foundation has been laid, no proof of voluntariness of this statement." The county judge ruled that the detective would be permitted to answer the question. Thereupon Bauman testified that he had informed defendant of the complaint that had been made against him; that defendant remarked that the complaining witness was "crazy," adverted to the fact that he had a wife and children and a large mortgage on his home and didn't want any trouble, and then had made a request to confer again with Mleziva. Bauman was then asked:
"Did you have any conversation with the defendant concerning, specifically concerning the alleged assault and battery?"
He answered:
"Yes. At first he said that this guy is nuts, and after speaking to him a few minutes longer he said that he slapped him but he didn't hurt him."
No objection was made on behalf of defendant to the above question and no motion was made to strike the answer. No request was made to conduct any preliminary hearing as to the voluntariness of this incriminating admission by defendant and no claim was made that it was not voluntary.
Richard Smith, owner of the car being driven by Mleziva at the time of the incident in question, testified that he was present at the meeting between defendant and Mleziva at police headquarters and overheard defendant say:
"I am sorry that I done this thing and never done it before. I lost my head, my temper. I didn't mean it."

*523 I.
Defendant contends that his alleged statement to Detective Bauman, that he had slapped the complaining witness, was a confession and should not have been received in evidence without the trial court's conducting a preliminary hearing to determine whether it had been voluntarily made. Defendant made no claim before the trial court and makes no claim here that the statement was not voluntarily made. His claim of error is directed solely to an assertion that a preliminary hearing as to the voluntariness of the statement was precedurally required.
It is true that when a State wishes to offer a confession in evidence it must show that the statement was voluntarily made, i.e., that it was not the product of force or the putting of the defendant in fear, or the result of a promise of favor. State v. Tassiello, 39 N.J. 282, 291 (1963); State v. Driver, 38 N.J. 255, 282 (1962); State v. Fauntleroy, 36 N.J. 379, 395 (1962). Be that as it may, the statement herein made by defendant to the detective was not a "confession" but rather an "admission" of one of the facts in issue. A confession is an admission of guilt by a party charged with a crime. It is a special kind of an admission. Every confession is an admission but not every admission is a confession. Thus, there may be an admission of some fact in issue without its being an admission of guilt of the crime charged. Here, the defendant admitted to the detective that he slapped Mleziva. His admission of the slapping was not per se an admission of guilt of assault and battery. The slapping may have been accidental and unintended; he may very well have had a legal defense to the charge even though he admitted the physical act.
The differentiating features of these two types of statements are set forth in 2 Wharton, Criminal Evidence (11th ed. 1935), § 580, p. 954, in these words:
"A confession is an acknowledgement in express terms by a party in a criminal case, of his guilt of the crime charged, while an *524 admission is a statement by the accused, direct or implied, of facts pertinent to the issue, and tending, in connection with proof of other facts, to prove his guilt. In other words, an admission, as applied to criminal law, is something less than a confession, and is but an acknowledgment of some fact or circumstance which in itself is insufficient to authorize a conviction, and which tends only to establish the ultimate fact of guilt."
Richardson on Evidence (7th ed. 1948), § 394, distinguishes confessions from admissions as follows:
"Any statement or act of the accused person which may lead to an inference of guilt is receivable against him as an admission. The distinction then between admissions and confessions by the accused is the distinction in effect between admissions of fact from which the guilt of the accused may be inferred by the jury and the express admission of guilt itself."
In brief, a confession admits guilt but an admission may embrace some inculpative fact without conceding the central fact of guilt.
The voluntary character of defendant's statement to the detective has not been put in issue. Defendant makes no assertion that it was coerced or induced by any promises. He simply denied that he ever said that he struck Mleziva. The issue was, therefore, one of credibility and the trial court resolved that issue against defendant. We are not called upon herein to decide whether an admission is subject to the same requirements concerning voluntariness as a confession. There is substantial authority that it is not so subject. We noted the contrary view in State v. Buffa, 51 N.J. Super. 218, 231 (1958), and left the question open. Under the circumstances herein, we need not decide whether an admission of a subsidiary fact must be voluntarily given. Were voluntariness required, the trial record makes it obvious that the alleged admission was voluntarily given.

II.
Defendant asserts that the evidence does not support a finding of guilt beyond a reasonable doubt.
*525 We find that the record amply supports such a finding. The complaining witness testified to an unwarranted assault and battery by defendant. The two passengers in his car, who witnessed the incident, corroborated the driver. Defendant admitted to the detective that he slapped Mleziva. Smith testified to an implied admission by defendant. Defendant's efforts to effect a settlement to avoid a formal complaint are in the nature of an implied admission by conduct. As against all this stand only defendant's denials. The issue boiled down to one of credibility. The trier of the facts believed the witnesses for the State.
"Our function on appeal ordinarily is not to make new factual findings but simply to decide whether there was adequate evidence before the County Court to justify its finding of guilt." State v. Dantonio, 18 N.J. 570, 575 (1955); State v. Zelinski, 33 N.J. 561, 567 (1960). "The credibility of the testimony is for the trial court to assess." State v. Zelinski, 33 N.J., at p. 567. In nonjury cases, we may make new or amended findings of fact, R.R. 1:5-4(b), but "when the result of the contest must turn on the truthfulness of witnesses, the superior advantage of the trial judge in seeing and hearing and appraising the disputants must ordinarily be regarded as the fulcrum on which the issue should be resolved." Abeles v. Adams Engineering Co., Inc., 35 N.J. 411, 423-424 (1961). We find no basis herein for disturbing the County Court's finding of defendant's guilt.
The judgment is affirmed.