86 N.J. Super. 262 (1965)
206 A.2d 754
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
JOHN PAUL YOUNG, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued November 30, 1964.
Decided January 18, 1965.
*263 Before Judges CONFORD, KILKENNY and LEWIS.
Mr. John W. Fritz (assigned counsel) argued the cause for appellant.
Mr. Michael R. Imbriani, First Assistant Somerset County Prosecutor, argued the cause for respondent (Mr. Arthur S. Meredith, Somerset County Prosecutor, attorney).
The opinion of the court was delivered by CONFORD, S.J.A.D.
Although this appeal also raises the question whether the verdict was against the weight of the evidence, we deem the only substantial question before us to be whether the circumstances attending the admission into evidence of a written confession of a codefendant operated so prejudicially against appellant Young as to call for a reversal. The evidence adduced against him by the State, primarily his identification in court by the victim of the holdup, sufficed in our judgment to sustain the jury verdict of conviction.
Young and one Williams were tried jointly on an indictment for armed robbery. The State's evidence tended to show that these persons, together with one "Uncle," drew up in a car alongside a parked automobile of one Washington, just after the latter entered it with some $3000 in cash which he had just obtained at a bank as the result of cashing pay checks of fellow-employees; and that Young emerged from the car, took the money from Washington under the threat of a brandished revolver, and sped away with the others.
Williams was apprehended first, and assertedly gave a signed written statement inculpating himself and Young in *264 full detail. At the trial Williams denied participation in the crime, recanted the confession, and testified he was forced to give it by force and violence of the police and by being plied with whiskey to the point of near-intoxication. Young's defense at the trial was an alibi, purportedly supported by witnesses.
The State offered evidence of the voluntary character of Williams' confession, and it was found voluntary by the trial judge after a hearing thereon outside the presence of the jury. Young objected to its admission in evidence because of its implication of him as a participant in the crime; alternatively, he moved to exscind therefrom each and every reference to him. The judge ruled against Young in both respects and allowed the document into evidence, first, however, explicitly informing the jury that it was being admitted as evidence against Williams alone and was not in any way to be considered by them in relation to the question of Young's guilt. This admonition was repeated in the court's formal instructions to the jury at the end of the case. There was at no time a motion by defendant Young for severance of his trial.
Defendant concedes that under the settled law of this State defendants may be jointly tried for a crime charged to have been jointly committed, notwithstanding the State intends to offer in evidence a confession made by only one of them which inculpates all, providing the jury is clearly informed at the time of its introduction at the trial that it constitutes evidence against the confessor alone and not against the others and that it should be completely disregarded in judging the evidence against them. State v. Ravenell, 43 N.J. 171 (1964); State v. Tassiello, 39 N.J. 282 (1963). He emphasizes, however, as did the Supreme Court in Tassiello (pp. 296-297), that there is always a possibility of prejudice to the non-confessing defendants in such a course, and he asserts that under the combination of surrounding circumstances here presented, the hypothesis of prejudice is overwhelming and the resulting injustice to defendant *265 manifest and inescapable. He further buttresses his position by pointing out that aside from Williams' confession the only evidence against him is an identification by one who is asserted to have seen him only for several seconds, and that in a state of fright and excitement. See People v. Krugman, 44 Misc.2d 48, 252 N.Y.S.2d 846, 851 (Sup. Ct. 1964).
The type of problem here presented is a recurrent and difficult one. Note the dissent by Mr. Justice Frankfurter in the 5-4 decision of the United States Supreme Court in Delli Paoli v. United States, 352 U.S. 232, 246, 77 S.Ct. 294, 1 L.Ed.2d 278 (1957), and the comment thereon in State v. Tassiello, supra (39 N.J., at pp. 296-297). See also People v. Krugman, supra. Tassiello, while pointing out that the general rule of admissibility is ordinarily justified by "considerations arising out of the due administration of criminal justice," nevertheless qualifiies the appropriateness of its application by the limitation that the "circumstances [be] such that the jury can reasonably be expected to follow the court's admonition to disregard the confession as to the other defendants."
In the present case we are constrained to the conclusion that the refusal of the trial court on motion of defendant to exscind certain portions of the Williams confession not necessary to the intelligibility thereof in relation to Williams' guilt, but manifestly harmful to Young, requires a reversal of the conviction of the latter.
The Williams confession is in the form of question and answer and is relatively short, taking up five pages in the transcript. It is peppered with references to Young's complicity, with use of his full name, "John Paul Young." The recital of the events up to and including the robbery itself takes two pages. Immediately thereafter is the following:
"QUESTION: Charlie, I show you two photographs of a colored man, one a front view with writing Police Department, Orange, New Jersey, 4-3-62, 5654, the other photo a side view, do you recognize this photo?
ANSWER: I do, the man is known to me as John Paul Young."
*266 Along with other excisions requested by the motion of defendant was the entirety of the foregoing.
Later in the statement there appears:
"QUESTION: Did John Paul Young have a gun in his possession on this day? ANSWER: Yes."
This was totally unnecessary, since the fact that Young accosted Washington with a gun already appeared in the statement.
Another portion of the statement reads:
"QUESTION: Who informed John Paul Young of Haywood Washington's activities of cashing checks twice a month? ANSWER: That I don't know where he got his information. But I do know I pointed him out."
There was no previous or subsequent reference in the statement to the subject of cashing checks or knowledge thereof. And Williams' answer to the question was negative. The retention of the question and answer in the statement as introduced in evidence constituted a gratuitous, incompetent involvement of Young and was not necessary to the intelligibility of the remainder of the confession as against Williams.
The final extraneous (as to Williams) reference to Young was a question asking for Young's address.
The most serious of the foregoing extraneous references in the statement to Young, all of which, in our judgment, could have been eliminated from the statement without any loss of its intelligibility as to Williams' involvement of himself, cf. State v. Ravenell, supra (43 N.J., at p. 183) ("all references to Ravenell were * * * deleted"), is the portion thereof wherein the confessor identified two photographs as being those of Young, with the ready inference that they were taken after Young's arrest by the Orange police. This portion of the Williams statement in evidence could only have had the effect, and that in a particularly dramatic fashion, of nailing down hard and fast the previous repetitive hearsay inculpations by the statement of Young as a participant in the crime. The legal assumption that the jury could psychologically *267 comply with the court's direction to disregard the statement as evidence against Young was inevitably undermined by the retention therein, as read and introduced into evidence, of the material mentioned above.
Capping the case for the prejudiciality of the Williams statement as against Young are certain references in the State's summation, which, whether or not so intended, coupled the statement with the subject of Young's guilt, or could have so been understood by the jury. The prosecutor said, at different points of his address to the jury:
"But you will see in the statement Mr. Williams said when the man `Uncle' refused to drive the power drive car, `Then I got in front and raised up high so that I couldn't be seen.' This you will have with you. So that when Mr. Young, who was seated next to him, got out with the gun, he would not be seen.

* * * * * * * *
But as you read this over, ladies and gentlemen, you will see there are facts in here that only Mr. Williams knew; * * * what they did with the envelopes in the cloth bag, they burned them up." (Emphasis ours)
Speaking of the confessor's allegation of force by the police in getting the statement, he said:
"* * * For what reason? Why would these men dedicate themselves to getting Mr. Young and Mr. Williams convicted? This is their job."
We do not imply that the foregoing summation references alone, which were not objected to, would have sufficed to establish reversible prejudice. But taking them with the improperly retained portions of the Williams statement discussed above, as against the motion to delete, there is a compelling demonstration that in totality the circumstances do not meet the Tassiello criterion (39 N.J., at p. 296) of being "such that the jury [could] reasonably be expected to follow the court's admonition to disregard the confession" of Williams in passing on Young's guilt. Cf. State v. Bruce, 72 N.J. Super. 247 (App. Div. 1962); State v. Ravenell, supra (43 N.J., at p. 183).
Reversed and remanded for a new trial.