STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v. ROBERT BROXTON, DEFENDANT-APPELLANT.

STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v. LARRY OGBURN, DEFENDANT-APPELLANT.

Argued May 8, 1967—Decided May 29, 1967.

Mr. *Charles E. Villanueva* argued the cause for appellant Broxton.

Mr. *Edward G. D'Alessandro* argued the cause for appellant Ogburn.

Mr. *Barry H. Evenchick,* Assistant Prosecutor, argued the cause for respondent (Mr. *Brendan T. Byrne,* Essex County Prosecutor, attorney).

The opinion of the court was delivered by

WEINTRAUB, C. J. This case arose out of a savage attack upon a young woman taken at gunpoint from her automobile in front of her home. There were four youthful assailants. One was dealt with as a juvenile. The others were tried before a jury upon indictments for rape, robbery and atrocious assault and battery. The appellants, Broxton and Ogburn, were convicted on all charges. The defendant Clark, convicted of rape and robbery but acquitted of atrocious assault and battery, did not appeal. We certified the appeals before argument in the Appellate Division.

## I

The first issue is whether it was error to try defendants jointly. The joinder was expressly authorized by *R. R.* 3 :4–8 and 3 :5–6. A severance may be had if prejudice may ensue from a joint trial, *R. R.* 3 :5–7, and the question is whether the trial court misused its discretion in refusing to order separate trials.

The claim of prejudice rests upon the circumstance that the State introduced the confessions of the defendants, each of which referred to the activity of three other associates in the offenses. The trial court excised all references which would identify another defendant as we held must be done in *State v. Young,* 46 *N. J.* 152 (1965). The jury was instructed at the time each confession was admitted and also in the charge at the end of the case that a confession could be used only against the defendant who gave it and that it should indulge in no speculation with respect to the excisions the court had ordered. Nonetheless defendants say they were harmed by each other's written statement.

The confessions were in essence mutually consistent, and none was exculpatory at the expense of another defendant. With the excisions referred to, the confessions agreed with the testimony of the victim and of the juvenile offender mentioned above who testified for the State, and as well with the facts otherwise established. That the crimes occurred was not questioned by the defense. No one disputed the fact that the victim was taken at gunpoint from her automobile and forced into a stolen car occupied by four males; that she was taken to a vacant flat where she was raped seven times; that she was brutally beaten about the face and head with the butt of the gun and her nose fractured; that a lighted cigarette was applied to her thigh; that her money and wristwatch were taken from her; that while her captors were thereafter transporting her in the stolen car, the owner of the car gave chase, as a result of which the assailants fled from the vehicle and their victim was rescued by the pursuers and the police. None

of this was challenged. Rather each defendant testified that he was beaten into accepting a story the police gave him and that in fact he was elsewhere at the time of the crime.

Thus, beyond implicating the individual who signed the confession, each statement served only to confirm the occurrence of the criminal events in terms that were not disputed. The only real issue as to each defendant was whether he was one of the four offenders. After the excisions, there remained nothing in any confession which on its face or because of some collateral circumstance identified any other defendant as one of the culprits. This being so, we see no reason to doubt the ability of the jury to comply with the trial court's instruction that the confession may bear against only the defendant who gave it. See, *State v. Johnson*, 31 *N. J.* 489, 506–507 (1960), appeal dismissed 368 *U. S.* 145, 82 *S. Ct.* 247, 7 *L. Ed. 2d* 188 (1961), *cert.* denied 368 *U. S.* 933, 82 *S. Ct.* 370, 7 *L. Ed. 2d* 195 (1961); *State v. Ordog*, 45 *N. J.* 347 (1965), *cert.* denied 384 *U. S.* 1022, 86 *S. Ct.* 1942, 16 *L. Ed. 2d* 1025 (1966); *State v. Green*, 46 *N. J.* 192, 197 (1965), *cert.* denied 384 *U. S.* 946, 86 *S. Ct.* 1475, 16 *L. Ed. 2d* 544 (1966).

## II

Each defendant attacks the trial court's finding that his confession was admissible. We see no substance to the claim.

Defendants further contend the trial court erred in hearing the testimony as to voluntariness in the presence of the jury. It has long been the rule in this State that the trial judge may, in his discretion, try that issue in or outside the presence of the jury. *State v. Gruff*, 68 *N. J. L.* 287, 290 (*E. & A.* 1902); *State v. Fiumara*, 110 *N. J. L.* 164, 166 (*E. & A.* 1933); *State v. Walker*, 33 *N. J.* 580, 592 (1960); *State v. LaPierre*, 39 *N. J.* 156 (1963), *cert.* denied *Bisignano v. New Jersey*, 374 *U. S.* 852, 83 *S. Ct.* 1920, 10 *L. Ed. 2d* 1073 (1963); *State v. Tassiello*, 39 *N. J.* 282, 291 (1963); *State v. Loray*, 41 *N. J.* 131, 136 (1963); *State v. Ravenell*, 43 *N. J.* 171, 183 (1964), *cert.* denied 379 *U. S.* 982, 85 *S.*

*Ct.* 690, 13 *L. Ed. 2d* 572 (1965); *State v. Cook,* 47 *N. J.* 402, 411–412 (1966). Wigmore speaks of the practice in permissive terms, saying the jury "may be withdrawn." 3 *Wigmore, Evidence* (3d ed. 1940), § 861, *p.* 349. In *State v. LaPierre,* we said (39 *N. J.,* at *pp.* 171–172):

"Bisignano asked the trial court to try the issue of voluntariness in the absence of the jury. No reason was advanced for that course, defendant simply contending the jury had to be excused.

There is disagreement elsewhere as to the propriety of taking the testimony initially in the presence of the jury. See Meltzer, 'Involuntary Confessions: The Allocation of Responsibility between Judge and Jury,' 21 *U. Chi. L. Rev.* 317, 330 (1954); *Annotation* 148 *A. L. R.* 546 (1944). The differences may well be influenced by the roles ascribed to judge and jury in the several jurisdictions. We have but recently reiterated that the subject rests in the sound discretion of the trial court. *State v. Walker,* 33 *N. J.* 580, 592 (1960). We are not dissuaded from that view by the argument here advanced, that a judge may be influenced to admit a confession because, if it is excluded after testimony is taken in the jury's presence, there will likely be a defense motion for a mistrial.

The question then is whether the trial court misused its discretion. We think it did not. Defendant did not point to a fair need to excuse the jury either throughout or during some stage of the hearing. Nor does it appear that the inquiry was in fact hampered by the jury's presence; and since the confession was later admitted into evidence, it was not harmful that the jury probably surmised at once the nature of the document in question."

 In the case at hand, the trial court asked counsel to state the basis for the request that the jury be excluded. The sole reason given was that if the court should ultimately exclude the statement the jury would nonetheless have apprehended its import. There was no suggestion that any defendant would be hampered in his attack upon the confession because of the jury's presence. In fact each defendant testified in the hearing upon the admissibility of his confession. There was no interrogation as to guilt or innocence. There was no prior conviction of crime, and there was no reference to the juvenile records of these men, which records, under our practice, cannot be proved at any stage to assail credibility. Thus the sole objection to the presence of the jury was and re-

mained that there might be harm if the statement should be excluded. That eventuality did not occur, and hence we see no basis for a claim of error.

But defendants say *Jackson v. Denno*, 378 *U. S.* 368, 84 *S. Ct.* 1774, 12 *L. Ed.* 2d 908 (1964), holds that the admissibility of a confession must be tried outside the presence of the jury. To support their claim defendants cite *United States ex rel. Pierce v. Pinto*, 259 *F. Supp.* 729 (*D. N. J.* 1966), affirmed 374 *F.* 2d 472 (3 *Cir.* 1967). We find nothing in *Jackson v. Denno*, or in the nature of the subject, to support the view that the Constitution requires that procedure in each and every case.

As a backdrop to this discussion, it is well to state briefly the several approaches to the trial of the voluntariness of a confession prior to *Jackson v. Denno*. Three views then commanded extensive support. One was the so-called orthodox view, under which the issue of voluntariness is wholly for the judge, the jury passing only upon the credibility of the confession. Wigmore thought any other concept was "heresy," because he deemed voluntariness to bear upon admissibility and admissibility traditionally is no concern of a jury. 3 *Wigmore, Evidence* (3d ed. 1940), § 861. Nonetheless, as Wigmore recognized and the citations in *Jackson v. Denno* make evident, there were many adherents to two other procedures. One, which we will call the "New York" view for convenience, left voluntariness to the jury with instructions to disregard the confession if not found to be voluntary. Under that view the trial judge did not himself decide a disputed issue of fact. This is the approach condemned in *Jackson v. Denno*. The remaining approach, called the "Massachusetts" or "humane" rule, requires both the judge and the jury to pass upon voluntariness, both obligated to reject the confession if it is involuntary. Under all of the foregoing approaches the evidence upon the issue ultimately goes to the jury, the difference being that under the orthodox view, the jury is concerned only with its impact upon the credibility of the contents of the confession, whereas under

the two "heretical" approaches, the jury is charged not to use the contents of the confession, however credible, unless the confession is found to be voluntary. Prior to May 23, 1960 we followed the orthodox rule. On that day a majority of our Court, concluding that the Massachusetts rule afforded greater protection for the accused, embraced that doctrine, but only for prospective application. *State v. Smith*, 32 *N. J.* 501, 557 (1960).

*Jackson v. Denno* did not involve the question whether the trial judge may hear the issue of voluntariness in the presence of the jury. This must be obvious since in that case the trial judge did not try the issue at all, for under the doctrine there applied, the jury alone passed upon voluntariness. It was precisely because the trial judge did not decide the question that the majority in *Jackson v. Denno* found the procedure to be bad. More specifically, the majority believed it to be wrong to leave voluntariness to the jury alone because (1) there was no way to know whether all the jurors found the confession to be voluntary, and (2) there was the danger that the lay, untrained mind of a juror would use the confession even if it were found involuntary. The majority therefore concluded that the constitutional value involved could not be protected unless a judge (or a jury specially empaneled for that purpose alone, see *fn.* 19, 378 *U. S.*, at *p.* 391, 84 *S. Ct.* 1774, 12 *L. Ed.* 2d, at *p.* 924) passed upon the issue. In keeping with that view, the majority concluded that the defendant was not entitled to a retrial of the issue of guilt if upon remand a judge should find the confession was voluntary.

Now, let us turn to *United States ex rel. Pierce v. Pinto*, *supra*, in which the United States District Court apparently held our practice was outlawed by *Jackson v. Denno*. In *Pierce*, the defendant was sentenced on December 16, 1959 for armed robbery. He took no appeal. About six years later he sought post-conviction relief in the State court on the ground that his confession was involuntary. His application was denied. Again he did not appeal, but instead sought

relief by *habeas corpus* in the United States District Court where he prevailed.

As we understand the situation in *Pierce,* the trial judge in the robbery case told the defendant the confession issue could be heard in or outside the presence of the jury, and asked whether the defense objected to a hearing in the presence of the jury, to which counsel for defendant replied that he had no objection. The trial judge found the confession to be voluntary, and received it into evidence. The trial occurred prior to *State v. Smith, supra,* and hence at a time when New Jersey adhered to the orthodox rule under which the judge, and only the judge, passed upon voluntariness. The trial judge did precisely that, and in harmony with the orthodox view, instructed ·the jury that it could utilize the same evidence in passing upon the weight and credibility to be given the statement. We gather, too, that in the post-conviction application to the State trial court, Pierce did not tender the issue upon which he prevailed in the federal court, *i.e.,* that *Jackson v. Denno* held that a trial judge's finding of voluntariness is vitiated because he and the jury heard the testimony at the same time. At any rate, taking that view of *Jackson v. Denno,* the Federal District Court found for Pierce.

In so finding for Pierce, the Federal District Court ruled that the State of New Jersey need not give the defendant a new trial as to guilt if the confession should be found voluntary in a new hearing before a judge. That was the mandate in *Jackson v. Denno,* but in *Pierce,* unlike *Jackson v. Denno,* a trial judge had already decided the issue of admissibility and hence it would seem merely ritualistic to ask another judge to rerun the course. Both the State and Pierce sought reargument. In his petition, Pierce added something new, pointing out that the trial judge had told the jury that he found the confession was voluntary. He contended that that circumstance required a new trial upon the issue of guilt. Thereupon the Federal District Court supplemented its prior opinion, recognizing that, unlike *Jackson v. Denno,*

"in the instant case the trial judge *did* make a determination, and communicated his finding to the jury," and concluding that anything less than a new trial could not cure the constitutional hurt. We are not sure we understand wherein the constitutional injury was finally found to repose. Specifically we cannot tell whether the wrong lay in (1) the presence of the jury or (2) the trial judge's communication of his finding of voluntariness to the jury. The brief, unsigned opinion of the Third Circuit refers only to the first item, saying that Pierce sought a new trial "because the testimony in regard to the voluntariness of his incriminating statement was heard and determined by the trial judge in the presence of the jury" and stating, without more, that the District Court's "decision was plainly right."

If *United States ex rel. Pierce v. Pinto* turned upon the trial court's comment to the jury upon voluntariness, it would not be relevant here, because in the matter before us the trial court made no such comment. Although obviously the Federal District Court found constitutional moment in that circumstance, the Third Circuit apparently did not, but on the chance that we misread its opinion, we digress to say we see no constitutional problem in the fact that the trial judge did acquaint the jury with his finding. Surely *Jackson v. Denno,* which was concerned only with the absence of a trial court finding upon voluntariness, did not deal with the question whether the trial court could constitutionally inform the jury of its finding upon voluntariness, an issue which under the orthodox view the jury may not even consider as such.[1]

Whether, under either the orthodox or Massachusetts rules, the trial court should tell the jury of its finding comes within the separate subject of the propriety of comment upon jury issues. New Jersey recognizes a broad power in a trial

---

[1] The sole reference we find is in the dissenting opinion of Mr. Justice Black which assumes that the trial judge will, or may, tell the jury of its opinion or finding. *Fn.* 7, 378 *U. S.,* at *p.* 404, 84 *S. Ct.* 1774, 12 *L. Ed.* 2d 932.

court to express its views on the evidence, so long as the jury is plainly told the issue of fact remains its final responsibility. *State v. Begyn,* 34 *N. J.* 35, 53 (1961); *State v. Smith,* 43 *N. J.* 67, 77 (1964), *cert.* denied 379 *U. S.* 1005, 85 *S. Ct.* 731, 13 *L. Ed. 2d* 706 (1965), rehearing denied 380 *U. S.* 938, 85 *S. Ct.* 945, 13 *L. Ed. 2d* 826 (1965). This was the orthodox view of the common law, and although in many jurisdictions the trial judge has been deprived of that authority, Wigmore notes correctly that "in New Jersey the orthodox rule bravely survives." 9 *Wigmore, Evidence* (3d ed. 1940), § 2551, *p.* 505, *n.* 3. So too in the Third Circuit. *United States v. Kravitz,* 281 *F. 2d* 581, 584–585 (3 *Cir.* 1960), *cert.* denied 364 *U. S.* 941, 81 *S. Ct.* 459, 5 *L. Ed. 2d* 372 (1961). When in *State v. Smith, supra,* 32 *N. J.,* at *p.* 549, we said as a "word of caution for future guidance," that a trial judge should not tell the jury he found the confession voluntary, we did not do so because we thought the Constitution so commanded or even because we thought it would necessarily be reversible error so to inform the jury. *Cf. State v. Walker, supra,* 33 *N. J.,* at *pp.* 593–594. Rather we thought it to be merely a better exercise of discretion. We have found no case holding that the subject of comment is now in the deadly grip of some deathless view of the Constitution.

To return to the proposition that the Constitution forbids a trial court from hearing the issue of voluntariness in the presence of the jury — the thesis initially embraced by the District Court and apparently thereafter by the Third Circuit —we should add that we see no support for that proposition in the other cases cited by the District Court in its opinion.

In *United States v. Carignan,* 342 *U. S.* 36, 72 *S. Ct.* 97, 96 *L. Ed.* 48 (1951), the alleged error reposed in the refusal to permit the defendant to testify in the absence of the jury (at *p.* 51). The Court said no more than this (342 *U. S.,* at *p.* 38, 72 *S. Ct.,* at *p.* 98, 96 *L. Ed.,* at *p.* 51):

"The United States concedes in regard to the third issue that *the better practice,* when admissibility of a confession is in issue, is for the judge to hear a defendant's offered testimony in the absence of the jury

as to the surrounding facts. Therefore, the Government makes no objection to the reversal of the conviction on that ground. We think it clear that this defendant was entitled to such an opportunity to testify * * *." (Emphasis ours)

We stress that the proposition was not cast in constitutional terms, and that the holding in any event went only to the right of a defendant himself to testify in the absence of the jury. Neither in *Pierce* nor in the case at hand did the defendant ask for *that* opportunity or suggest any reason why he did not want the jury to hear him, and here, and also in *Pierce,* the defendants did testify.

In *United States ex rel. Dickerson v. Rundle,* 363 *F. 2d* 126 (3 *Cir.* 1966), cited by the District Court in *Pierce,* the situation was precisely the same as in *Jackson v. Denno, i. e.,* that the trial court did not pass upon voluntariness, and there, as in *Jackson v. Denno,* the relief granted was not a peremptory order for a new trial as to guilt, the State of Pennsylvania being permitted first to have a hearing upon voluntariness before a judge.

Nor is the District Court supported by *Boles v. Stevenson,* 379 *U. S.* 43, 45, 85 *S. Ct.* 174, 175, 13 *L. Ed. 2d* 109, 111 (1964), cited in its opinion on rehearing. There the Court merely observed that "The practice in West Virginia, when an objection to a confession is interposed, is to hold a preliminary hearing out of the presence of the jury at which the trial judge fully determines the coercion issue." Although there are a few cases which in stating the view of *Jackson v. Denno* speak of a trial of the issue in absence of a jury, in all the statement is only casual, and in none was the question involved. *Trotter v. Stephens,* 241 *F. Supp.* 33, 47 (*E. D. Ark.* 1965), affirmed *sub nom. Harris v. Stephens,* 361 *F. 2d* 888 (8 *Cir.* 1966) ; *Stewart v. Stephens,* 244 *F. Supp.* 982, 992 (*E. D. Ark.* 1965) ; *State v. Owen,* 96 *Ariz.* 274, 394 *P. 2d* 206 (*Sup. Ct.* 1964) ; *Commonwealth ex rel. Gaito v. Maroney,* 416 *Pa.* 199, 204 *A. 2d* 758 (*Sup. Ct.* 1964). On the other hand, *People v. Oats,* 239 *Cal. App. 2d* 261, 48 *Cal.*

*Rptr.* 579, 583–584 (*D. Ct. App.* 1966), holds flatly that *Jackson v. Denno* does not require a hearing outside the presence of the jury, saying that such a hearing should be granted if the defendant so requests and supports the request with a showing that evidence will be offered which will be inadmissible on the question of guilt. We note also that after the District Court decision in *Pierce* and before the Third Circuit decided that case, another judge of the same District Court held that *Jackson v. Denno* did not warrant relief where in fact the confession was admitted into evidence and there was no unfairness to the defendant. *Brown v. State of New Jersey* (Civil No. 1162-65).

On principle we see no tenable ground to declare that the presence of a jury must vitiate a trial court's finding as to voluntariness. As we noted above, no reason was given for the request for a hearing outside the presence of the jury other than the possibility, which did not eventuate, that the confessions might be excluded. To strike down the trial court's finding merely because the jury was present is to assume that the jury's presence somehow taints the ability of the judge to discharge his duty. Although judges at times doubt that a juror can obey limiting instructions, they do not question their own ability to do what the law requires. Nor could they without destroying the judicial process. Surely no one would say, for example, that a judge sitting without a jury may not try a case involving a challenged confession, or that appellate judges cannot deal with that issue unless they are insulated from evidence bearing upon guilt. Yet that seems to be the footing of *United States ex rel. Pierce v. Pinto,* unless we misread it.

The question whether a confession should be heard outside the presence of the jury is troublesome, wholly apart from any constitutional problem.[2] We recently placed on the agenda for the Judicial Conference the question whether the admissibility of a confession should be decided on a motion before trial. See, *State v. Green,* 49 *N. J.* 244 (1967).

There are obvious advantages and disadvantages in a separate hearing either before or at trial. See, Meltzer, "Involuntary Confessions: The Allocation of Responsibility between Judge and Jury," 21 *U. Chi. L. Rev.* 317, 330–331 (1954). It may be well for the State and defense to know before trial whether the confession will come in, and in some cases it may be desirable to permit interlocutory review. But on the other hand, when the issue is tried outside the presence of the jury, the issue must then be retried before the jury both under the orthodox and the Massachusetts rules. A replay is rarely as satisfactory, for there is absent the freshness of the first cross-examination. Moreover, the burden upon all concerned, principals and witnesses, is substantial, to say nothing of the burden on the judicial process which already moves at a snail's pace in criminal matters. In the case before us, the trial of the issue of voluntariness covers some 650 pages of transcript. Realistically, most confessions are admissible, and to encumber all cases with two trials of the same issue because of the danger of a mistrial in a few may be too heavy a price to exact from all concerned. Moreover, several trials of the same issue may present difficult questions. If in testifying in the absence of the jury, the defendant makes damaging admissions with respect to voluntariness, may the State prove them on the rerun before the jury? If not, the jury will be using a record different from the one the trial judge used. And what should be done if a defendant who does not testify on the preliminary hearing decides to testify before the jury, or if he offers before the jury other evidence not submitted to the trial judge alone?

---

2 We expect shortly to promulgate the Rules of Evidence heretofore proposed pursuant to the Evidence Act, 1960, *N. J. S.* 2A:84A–33 *et seq.* The rules, which will become effective September 11, 1967, will provide that, if requested, the hearing on admissibility shall be held outside the presence of the jury (Rule 8(3)). That provision of course will apply only to cases tried after the effective date. *N. J. S.* 2A: 84A–42.

█ We mention these facets to indicate the room for earnest disagreement, and to suggest that it is not the kind of a problem that a Constitution should be held to settle in only one way. Rather the Constitution can be asked to say no more than this: that the practice shall be such as to permit a fair hearing upon the voluntariness of confession, and if that is had, it matters not at all whether it was achieved in or outside the presence of the jury. *Jackson v. Denno* says nothing more.

█ We cannot find in that case a holding that the Constitution is offended when a judge does what is required of him on a full and unimpeded hearing merely because a jury was present when he heard the testimony. If that is what *United States ex rel. Pierce v. Pinto* means, we cannot agree with it. We of course are not bound by that decision, *State v. Coleman,* 46 *N. J.* 16, 36 (1965), *cert.* denied 383 *U. S.* 950, 86 *S. Ct.* 1210, 16 *L. Ed. 2d* 212 (1966), and although we regret a conflict of views between federal and state courts operating within the same territory, yet the primary responsibility for the criminal process in the State is ours and we would be unequal to that responsibility if we did not follow our own reading of *Jackson v. Denno,* especially since *United States ex rel. Pierce v. Pinto* not only gives constitutional moment to something we think is not even a matter of mere error, but also because it applies its view retroactively to a case tried long before *Jackson v. Denno,* thereby raising the prospect of unsettling a substantial number of old convictions. In the latter regard we note that in *Sims v. State of Georgia,* 385 *U. S.* 538, 87 *S. Ct.* 639, 643, 17 *L. Ed. 2d* 593, 598 (1967), the Court said that "Jackson, having been decided June 22, 1964, was binding on the courts of Georgia in this case, it having been tried October 7, 1964," thus suggesting that *Jackson v. Denno* should have no application to cases tried before the date of that decision. This would accord with the view of *Johnson v. State of New Jersey,* 384 *U. S.* 719, 86 *S. Ct.* 1772, 16 *L. Ed. 2d* 882 (1966), concerning the retroactive

application of *Miranda v. State of Arizona,* 384 *U. S.* 436, 86 *S. Ct.* 1602, 16 *L. Ed. 2d* 694 (1966). And finally, if perchance we do misread *Jackson v. Denno,* still we could not accept the anomaly created by *United States ex rel. Pierce v. Pinto,* that whereas when a trial judge made no finding at all, the constitutional failure will be remedied if a finding of voluntariness is made in a new hearing before a trial court, yet, if the trial court did at the original trial make the findings required by *Jackson v. Denno,* then, somehow, the constitutional shortcoming can be remedied only on a retrial of the issue of guilt.

### III

 Defendant Broxton contends the trial court erred in refusing to entertain an objection, first made at trial, to the introduction into evidence of a gun seized when he was arrested. Our rules provide that a motion to suppress for an alleged violation of the Fourth Amendment must be made before trial and may be made at trial only if the court finds it could not reasonably have been made prior thereto. *R. R.* 3:2A–6(a); *State v. Campisi,* 49 *N. J.* 238 (1967). The rule is reasonable and must be met if there is to be order in the judicial process. Defendant could give no reason for omitting to make a timely motion to suppress.

 In any event, defendant's own testimony reveals there was no basis for a motion. Two detectives searching for Broxton went to the home of his sister. They were admitted into the kitchen by the sister. When they asked for Broxton, she called him. According to Broxton, when he entered the kitchen the detectives directed him to come with them. Instead Broxton left the kitchen, he says to get his coat and also to get rid of the gun which was in his pants pocket. A detective promptly followed and, as Broxton himself said, the detective saw the gun fall to the floor as Broxton sought to get it out of his pocket. The gun, a starter's pistol, was the weapon Broxton had used upon the victim. We see no semblance of an issue.

## IV

██ The final point relates to the prosecutor's summation. Although, as noted above, no one really disputed the multiple rape of the victim, counsel for one defendant tried to make something in his summation of the fact that no one testified that an internal examination of the victim revealed seminal fluid, thereby to support the victim's testimony as to penetration. In the context of this trial, the absence of such testimony was quite meaningless, especially since the victim was a married woman and a nurse. The prosecutor's reply was to the point, and although not phrased with elegance, it was not inflammatory.

The judgments are affirmed.

*For affirmance* — Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN — 7.

*For reversal* — None.