**UNITED STATES of America ex rel. David Guy BALDWIN, Petitioner,**

v.

**Howard YEAGER, Principal Keeper, New Jersey State Prison, Trenton, New Jersey, Respondent.**

Civ. No. 1127–68.

United States District Court,
D. New Jersey.

April 29, 1969.

David Guy Baldwin, pro se.

Arthur J. Sills, Atty. Gen., State of New Jersey, for respondent.

## OPINION AND ORDER

WHIPPLE, District Judge:

This is an application for the issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2241 et seq., which the court has permitted the petitioner, David Guy Baldwin, to file in forma pauperis. Petitioner is currently confined to the New Jersey State Prison, Trenton, New Jersey, where he is serving a term of life imprisonment pursuant to a conviction of first degree murder. This sentence was imposed by the Ocean County Court on May 28, 1965 after trial and conviction by a jury verdict.

The petitioner presents four grounds for relief: (1) Admissions obtained from petitioner by use of a police informer after indictment violated the due process clause of the Fourteenth Amendment; (2) Petitioner is entitled to habeas corpus relief when statements obtained after an indictment without the benefit of counsel were introduced at petitioner's trial; (3) The submission of the question of voluntariness of the admission to the jury as a question of fact, rather than a question of law was improper and prejudicial; (4) A new trial should have been granted because of the serious constitutional questions involved when the court made its finding at the conclusion of the motion for a new trial.

The petitioner appealed his conviction directly to the New Jersey Supreme Court pursuant to R.R. 1:2–1(c) [now R. 2:2–1 (a) (3)] which affirmed the trial court. State v. Baldwin, 47 N.J. 379, 221 A.2d 199 (1966). Subsequently, the petitioner filed a petition for a writ of certiorari to the United States Supreme Court which denied same on December 5, 1966. Baldwin v. New Jersey, 385 U.S. 980, 87 S.Ct. 527, 17 L.Ed.2d 442 (1966). On March 8, 1967 an order was entered in the United States District Court,[1] stating that the petitioner's application " \* \* \* for a Writ of Habeas Corpus, or as characterized by applicant to review the denial by the Supreme Court of the United States to grant a writ of certiorari, be and the same is hereby dismissed." The petitioner had not at that juncture exhausted the available post-conviction relief remedies provided for by R.R. 3A:-10–1 et seq., N.J.S.A. and as required by 28 U.S.C. § 2254.

Subsequently, an application for post-conviction relief was filed in the Ocean County Court and denied on October 30, 1967. Thereafter, the petitioner filed an appeal with the Superior Court (Appellate Division) and on June 24, 1968, the grounds previously enumerated were held to be lacking in merit in an unpublished *per curiam* opinion, (Docket No. A–348–67). A petition for certification to the New Jersey Supreme Court was denied on October 1, 1968. Therefore as to the grounds presented in this petition, the petitioner has sufficiently exhausted his state remedies as required by 28 U.S.C. § 2254. See Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963).

Before discussing the grounds urged by petitioner, a review of the facts as disclosed by the record is necessary. During the course of the trial and out of the presence of the jury, one Richard Cordine (Cordine) was called as a witness for the State concerning conversations had in the Ocean County Jail between petitioner and Cordine while they occupied neighboring cells. Cordine was in the Ocean County Jail being held on a charge of assault and battery and was also under sentence or about to be sentenced for an offense in Somerset County. Cordine originally met the petitioner while both were in the Ocean County Jail beginning in October of 1964; however, in January and February of 1965, Cordine was transferred and confined to the New Jersey State Hospital, Vroom Building in Trenton, apparently for treatment of emotional and mental problems. During this time period one Detective McCulloch (McCulloch), having learned in some way not revealed by the record that petitioner had conversations with Cordine about the case, approached Cordine and sought his aid in an attempt to gather incriminating evidence against petitioner. Cordine declined at first to cooperate but subsequently agreed to assist the detective apparently induced to do so as a result of discussions with the prosecutor's office. Cordine testified, out of the jury's presence, that during the time period subsequent to his return from the Vroom Building, he spoke with the petitioner nearly every day in order to elicit information regarding the pending murder indictment but that many of these

1. In the Matter of the Application of David Guy Baldwin for the Writ of Habeas Corpus, Civil No. 33–67 (D.N.J.1967).

**12**

aforementioned conversations were initiated by the petitioner.

The trial transcript further reveals that Cordine, in the jury's presence, gave testimony that did not constitute a direct admission of guilt but inculpated the petitioner inferentially by attributing two statements to him. The first statement in response to a suggestion by Cordine that petitioner plead guilty to second degree murder was:

" 'Well it is their burden to prove beyond reasonable doubt that I did kill this man * * * right now I feel no immediate danger, but in the event that they should ever get warm, why, I just might ask for that if they would permit me.' "

The second statement attributed by Cordine to the petitioner was:

" 'That it seemed to be my luck that it was the first day of bow and arrow season that they discovered the body.' " Sttae v. Baldwin, supra, 47 N.J. at 399–400, 221 A.2d at 202.

At the trial Cordine attempted to testify to his conversations with petitioner both prior to and then subsequent to his contact with the prosecutor's office. The trial judge was duly concerned whether the circumstances heretofore related were distinguishable from Massiah v. United States, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964) and whether Cordine was able to testify from his recollection as to what petitioner had told him before he went to the Vroom Building as opposed to what was related to him by petitioner after he was returned to the Ocean County Jail.[2] After a great deal of thought and consideration the trial judge admitted into evidence only that which petitioner had related to Cordine prior to the

latter's consenting to aid the prosecutor's office.

Thus, the trial judge concluded that Massiah v. United States, supra, precluded the eliciting of any conversations after the interposition of the prosecutor's office, but that Cordine could testify to any conversation prior to his initial contact with the prosecutor's office.

The first and second grounds for relief, considered together, basically allege that the admission into evidence of any inculpatory statement *deliberately elicited* by government officials after indictment *and in the absence of counsel* violates petitioner's Fifth and Sixth Amendment rights (Emphasis added). The petitioner contends that the thrust of Massiah v. United States, supra, is that it " * * * [C]reates a blanket prohibition against receipt into evidence of any inculpatory statement by a defendant [Baldwin] when this statement has been made post-indictment, in the absence of an attorney, and when the statement is elicited either directly or indirectly by a law enforcement officer * * *. The trial judge in the case at bar by fixing an arbitrary point in time other that [sic] the time of the indictment, circumvented the holding in *Massiah* and emasculated the general policy considerations which effectuated the decision in Massiah. The next major case toward the fashioning of such a rule is Escobedo v. Illinois, 378 U.S. 478 [84 S.Ct. 1758, 12 L.Ed.2d 977] * * * (1964). The penultimate case, of course, is Miranda v. Arizona, 384 U.S. 436 [86 S.Ct. 1602, 16 L.Ed.2d 694] * * * (1966), which was decided after trial in the instant case and hence, can have no application here." [3]

On the other hand, the respondent urges a different interpretation of Massiah v. United States, supra. He argues Mas-

2. The defense called one John Donohue (Donohue), an inmate of the Ocean County Jail, (who at this time was confined with Cordine and petitioner in the same cell) who testified that he had several conversations with Cordine on April 4 or 5, 1965, at which time Cordine related to Donohue that he had no knowledge of

petitioner's guilt (Trial transcript p. 878). Donohue further testified that Cordine expected that the charges against him in Somerset County would be taken care of in return for information regarding the crime.

3. Petitioner's Brief and Appendix, (Civil No. 1127–68) at p. 16.

siah v. United States, supra, is not applicable to this factual situation since the police did not initially solicit the statements or admissions sought to be used against petitioner, and second that it cannot be persuasively argued that Cordine was acting in any sort of police capacity when he originally spoke with the petitioner. Therefore, the mere fact that petitioner volunteered such statements gratuitously to a person separated from law enforcement did not taint the admissibility of such evidence but rather was simply a case of misplaced confidence.

Massiah v. United States, supra, involved a defendant indicted for violating the federal narcotics laws. He retained a lawyer and pleaded not guilty and was released on bail. While free on bail a superceding indictment was returned charging Massiah and one Colson with the same substantive offense. Again Massiah, along with Colson, retained a lawyer, pleaded not guilty and was released on bail. Subsequently, a post-indictment conversation between Massiah and Colson, who had agreed to cooperate with the customs officials, took place in the latter's car which was monitored with a receiving device through which the government agents could hear their conversation unbeknownst to Massiah. The petitioner later argued that his Fifth and Sixth Amendment rights were violated by the admission into evidence of the incriminating statements which government agents had deliberately elicited from him after he had been indicted and in the absence of retained counsel, all of which allegedly led to his conviction. The court concluded at p. 207, 84 S.Ct. at p. 1203 "[a]ll that we hold is that defendant's own incriminating statements, obtained by federal agents *under the circumstances here disclosed*, could not constitutionally be used by the prosecution as evidence against *him* at his trial." (Emphasis added).

A number of federal courts have interpreted Massiah v. United States, supra, as establishing an exclusionary rule solely for incriminating post-indictment statements by an accused which have been induced or deliberately elicited by government agents, police officers, etc., in the absence of counsel. United States v. Smith, 379 F.2d 628 (7th Cir. 1967), cert. denied 389 U.S. 993, 88 S.Ct. 491, 19 L.Ed.2d 486 (1967); United States v. Garcia, 377 F.2d 321 (2d Cir. 1967); cert. denied 389 U.S. 991, 88 S.Ct. 489, 19 L.Ed.2d 484 (1967); Stowers v. United States, 351 F.2d 301 (9th Cir. 1965); United States v. Gardner, 347 F.2d 405 (7th Cir. 1965), cert. denied 382 U.S. 1015, 86 S.Ct. 626, 15 L.Ed.2d 529 (1966) and United States v. Accardi, 342 F.2d 697, 701 (2d Cir. 1965), cert. denied 382 U.S. 954, 86 S.Ct. 426, 15 L.Ed.2d 359 (1965).

Other federal courts have expanded the scope of Massiah v. United States, supra, in light of McLeod v. Ohio, 381 U.S. 356, 85 S.Ct. 1556, 14 L.Ed.2d 682 (1965) wherein the Supreme Court of the United States ultimately reversed a decision of the Ohio Supreme Court,[4] wherein the latter court had attempted to limit Massiah v. United States, supra, to statements deliberately elicited from an accused by an informer who had agreed to cooperate with the government. In light of the Massiah-McLeod cases the court in Hancock v. White, 378 F.2d 479, 482 (1st Cir. 1967) concluded:

"The action of the Court in McLeod v. Ohio, 381 U.S. 356, 85 S.Ct. 1556, 14 L.Ed.2d 682 (1965), reversing State of Ohio v. McLeod, 1 Ohio St.2d 60, 203 N.E.2d 349 (1964), on *Massiah*, however, shows that the *Massiah* rule is not limited to *Massiah* 'circumstances' but applies to exclude post-indictment incriminating statements of an accused to government agents in the absence of counsel even when not deliberately elicited by interrogation or induced by misapprehension engendered by trickery or deception."

---

4. Ohio v. McLeod, 1 Ohio St.2d 60, 203 N.E.2d 349 (1964). See also United States ex rel. Russo v. New Jersey, 351 F.2d 429 (3d Cir. 1965).

In a recent decision, United States ex rel. O'Connor v. State of New Jersey, 405 F.2d 632, 636 (3d Cir. 1969), the court observed that "[b]y its disposition of *McLeod* the court has said, in effect, that *Massiah* commands an absolute right to counsel after indictment, thereby vitiating the validity of all oral communications *between the defendant and the police made in the absence of counsel.*" (Emphasis added). The Supreme Court of the United States has recently confirmed this interpretation in Beatty v. United States, 389 U.S. 45, 88 S.Ct. 234, 19 L.Ed.2d 48 (1967), reversing 377 F.2d 181 (5th Cir. 1967).

The case of Paroutian v. United States, 370 F.2d 631, 632 (2d Cir. 1967), cert. denied 387 U.S. 943, 87 S.Ct. 2077, 18 L.Ed.2d 1331 (1967) is strikingly similar to the facts revealed by the record before this court. The appellant therein was incarcerated and awaiting trial and shared a cell with another prisoner [De Almeida] who was being detained on an entirely unrelated charge. The appellant argued that the incriminating statements made to De Almeida should have been excluded in that he had already been indicted and assigned counsel, therefore, in light of Massiah v. United States, supra, the incriminating statements made to De Almeida were in violation of the Sixth Amendment since they were made in the absence of counsel. The court stated that the trial court found that the government had not assigned De Almeida to appellant's cell and that appellant's admissions were voluntarily made. The Court of Appeals accepted those findings and concluded its opinion by stating:

"The basic purpose of the holding in *Massiah* [v. United States], was to prevent the government's interrogating persons under indictment who had already retained counsel, in the absence of their counsel. The requirement of the presence of counsel whenever indicted persons talk indiscreetly to third parties could not have been in the

Court's mind and would not contribute to the accomplishment of its purpose."

Similarly in Stowers v. United States, supra, the appellant and his alleged co-defendant, one Kirtley (Kirtley) were charged with scheming to obtain money by false pretenses and unlawfully causing interstate transmittal of the money in violation of 18 U.S.C. § 1343. Subsequent to their arrests, the co-defendants were confined in the same cell and engaged in various conversations. At the appellant's trial Kirtley, testifying as a prosecution witness, testified to the contents of their conversations in which he stated that appellant made incriminating admissions which appellant alleges were then improperly received as evidence. The court found that even if the alleged statements constituted admissions, inferentially damaging-to the appellant, there was not a sufficient basis upon which to support appellant's claim of prejudicial error. Further, the court concluded that "[t]here is no law, constitutional or otherwise, which protects an alleged criminal against his own failure to remain mute in every environment and under all circumstances." [5]

In the present case, the record before this court reveals that the original admissions by petitioner, (prior to the date Cordine was confined in the Vroom Building) were not suggested by Cordine but were made voluntarily by petitioner. There is no evidence in the record to support the contention that the admissions of petitioner made post-indictment and before the State intervened, were not gratuitously volunteered to Cordine, but rather elicited by the prosecutor's office. Nor is there any testimony in the record indicating that Cordine was not acting independently in gathering information prior to the agreement he subsequently reached with the prosecutor's office.

This court does not agree with petitioner that Massiah v. United States, supra, requires that any post-indictment admission in the absence of counsel be

---

5. Stowers v. United States, supra, 351 F.2d at 302.

excluded if the admission is solicited by law enforcement officials, even though the solicitation is made after the admission has been made. The petitioner points to the case of State v. Green, 46 N.J. 192, 200, 215 A.2d 546, 551 (1965), cert. denied 384 U.S. 946, 86 S.Ct. 1475, 16 L.Ed.2d 544 (1966) where the court said in light of McLeod v. Ohio, supra, " * * * we must now interpret *Massiah* as holding that after a defendant is indicted any statement elicited by the police in the absence of counsel is inadmissible even where the statement is voluntarily given." There can be no dispute that Massiah v. United States, supra, is applicable with regard to a state prosecution. State v. Blanchard, 44 N.J. 195, 207 A.2d 681 (1965). As such petitioner argues that since the "admissions" were post-indictment and without counsel this is sufficient to bar their admission. However, in the recent case of State v. McKnight, 52 N.J. 35, 43, 243 A.2d 240, 245 (1968), the New Jersey Supreme Court, while relating the factual background and surrounding circumstances therein, stated: "[n]or does the situation come within State v. Green, 46 N.J. 192, 215 A.2d 546 (1965) cert. denied 384 U.S. 946, 86 S.Ct. 1475, 16 L.Ed.2d 544 * * * (1966), where we said that *Massiah* precluded any interrogation of the accused after his indictment 'even where the statement is voluntarily given' [46 N.J.] p. 200 [215 A. 2d p. 551] in the sense that it was given without coercion. *We did not say that a defendant, aware of his right to counsel, could not choose to talk.*" (Emphasis added). Particularly, there has been no showing by the petitioner that Cordine was originally placed in geographic proximity with the former by the prosecutor to surreptitiously elicit self-incriminating admissions.[6] This court agrees with

the Second Circuit Court of Appeals wherein it states:

"We are certain that in deciding *Massiah,* the Supreme Court did not intend to hold that all those to whom indicted persons made admissions become *ipso facto* government agents and that nobody to whom defendants in criminal cases make incriminating statements can testify to those statements unless counsel was present when the statements were made." [7]

The trial court examined the facts before it and concluded that: "[t]he facts that I have before me are indicative of Cordine fortuitously being placed in the same cell block and striking up a conversation with defendant Baldwin and the defendant Baldwin gratuitously gave him certain information, the subject of the alleged admission, which would be the subject matter of the testimony here. There isn't any reason to believe that the statement or admission wasn't voluntary in nature. In effect, it was not made to a police officer or to one in such capacity. It was merely made to a fellow inmate of the county institution, and, accordingly, I am satisfied that it may be admitted into evidence." [8] This court, as well, has carefully examined the record before it and being fully cognizant of the progeny of the post-Massiah cases agrees that petitioner volunteered the admissions of his criminal act to Cordine, his friend, who during their initial discussions had no association with the prosecutor's office. Neither is there evidence that Cordine's testimony was tainted because of his subsequent relationship with the prosecutor despite a later affidavit of recantation by Cordine which was the focal point of a motion for a new trial.

Petitioner, in arguing for an expansive interpretative of the Massiah-Mc-

---

6. The United States Supreme Court recently declined to consider whether the Fifth or Sixth Amendment affords protection to a person who makes incriminating post-arrest admissions to an undercover policewoman planted by the government. A writ of certiorari was dismissed as being improvidently granted over the dissent of four justices. Miller v. State of California, 392 U.S. 616, 88 S.Ct. 2258, 20 L.Ed.2d 1332 (1968).

7. Paroutian v. United States, supra, 370 F.2d at 632.

8. Trial transcript, p. 821.

Leod cases, urges that since he did not know he was being "interrogated" he was deprived of the opportunity to elect whether or not to call counsel, an opportunity established as a federal standard by the Sixth Amendment. While it is, of course, improper for the police to compel the accused to help convict himself and also unfair for the accused to be tricked into convicting himself, the incriminating admissions to Cordine were not the direct product of post-indictment police or government interrogation but were volunteered by petitioner. Since petitioner's admissions in this case were voluntary and since these admissions were made spontaneously and gratuitously to Cordine in the absence of any post-indictment interrogation by the prosecutor or his agents, Escobedo v. Illinois, supra, has no application to this case.

■ Therefore, this court finds without merit petitioner's contention that the introduction of Cordine's testimony violated petitioner's constitutional right to the presence of counsel at the time he made the admissions to Cordine or that Massiah v. United States, supra, may be invoked to make inadmissible a post-indictment admission under the circumstances present here since Cordine was not at the time an agent of the prosecution.

■ The third ground presented for relief is that the submission of the question of the voluntariness of the admissions to the jury was improper and prejudicial inasmuch " * * * as there was no specific hearing, examination and opinion as to the voluntariness of the 'confession.' "[9]  See Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964).

Respondent argues that the petitioner never put in issue at the trial the voluntariness of his admissions and since they were not made to a police officer, the question of voluntariness never arose. In fact, the defense was that the statements had never been made. If the trial court erred in even submitting the issue of voluntariness to the jury, it erred on behalf of the defendant.[10]

In Jackson v. Denno, supra, the United States Supreme Court held as a matter of due process, where the voluntariness of a confession is brought into question, the trial judge should and finally determine the voluntariness of the confession in proceedings outside the presence of the jury, or alternatively should permit the jury to pass upon that question only after the judge has fully and independently resolved the issue against the accused in proceedings outside the jury's presence.[11]

The trial judge noted that " * * * the State has the burden of proving on the voir dire that this information is given voluntarily because it's in the nature of a confession or an admission and I believe this should be established to the court."[12]  Subsequently, out of the hearing of the jury, the trial judge made an independent judgment as to the prima facie admissibility of the said "admissions" and ruled that they might go to the jury with appropriate instructions.[13]

The issue of voluntariness was fully and fairly submitted by the trial court to the jury which ultimately found the petitioner guilty.[14]  The procedure followed by the trial court in no way contravened the holding of Jackson v. Denno, supra. The trial judge's conclusion of voluntariness appears in the record with unmistak-

9. Petitioner's Brief and Appendix (Civi' No. 1127-68) at p. 25.

10. Brief of Plaintiff-Respondent to Superior Court (App.Div.) Docket No. A-348-67 at p. 7.

11. The New Jersey Supreme Court announced in State v. Broxton, 49 N.J. 373, 386, n. 2, 230 A.2d 489 (1967) that hear-

ings on admissibility shall be outside the jury's presence if the defendant so requests. See N.J.S. 2A:84A-16, N.J.S.A.

12. Trial transcript, p. 806.

13. Id. at 818-19.

14. Id. at 1314-15.

able clarity.[15]  See also Sims v. Georgia, 385 U.S. 538, 87 S.Ct. 639, 17 L.Ed.2d 593 (1967).

From a review of the record, this court does not find any constitutional ground warranting interference as to this ground for relief.

The fourth and final ground for relief presented to the court is that a new trial should have been granted petitioner when the court made its findings at the conclusion of the motion for a new trial.

Petitioner argues that "[t]he trial judge made an additional error of constitutional dimensions when in the motion for a new trial he ruled that assuming Cordine did not tell the truth, a new trial would be granted only if the absence of the evidence would probably result in a different verdict."[16]  Therefore, the issue to be decided is whether the testimony given at the trial was probably false resulting in a substantial possibility of a miscarriage of justice.  The basis for the motion for a new trial was a recanting affidavit sworn to by Cordine wherein he stated that all of his testimony given on May 12, 1965 at petitioner's trial was false.

State v. Puchalski, 45 N.J. 97, 107–108, 211 A.2d 370 (1965) sets forth the test regarding the evaluation of a recantation by the trial judge at a motion for a new trial.  The trial judge must consider whether the recantation casts serious doubt upon the truth of the testimony given at the trial and whether if believable, the factual recitation of the recantation so seriously impugns the entire trial evidence as to give rise to the conclusion that there resulted a possible miscarriage of justice.  See also State v. Sullivan, 43 N.J. 209, 232–233, 203 A.2d 177 (1964); State v. Artis, 36 N.J. 538, 541, 178 A.2d 198 (1962), and State v. Vaszorich, 13 N.J. 99, 130, 98 A.2d 299 (1953).

Here the trial court found that Cordine's new testimony regarding the affidavit of recantation could not be credited since this testimony did not satisfy the trial court as being true.  Additionally, the trial court found that even assuming the testimony of Cordine were true and, in fact, he had perjured himself at the trial, there was sufficient evidence to support a conviction without Cordine's testimony.  This view is amply sustained by the record, therefore, this court is not convinced that petitioner suffered any fundamental unfairness in a constitutional sense so as to deprive him of due process of law warranting a writ of habeas corpus.

Wherefore, it is on this 29th day of April, 1969, ordered that the petitioner's application be and is hereby denied.

This court further certifies that in its opinion probable cause for appeal does exist.

15.  Id. at 819–20.

16.  Petitioner's Brief and Appendix, (Civil No. 1127–68) at p. 24.