**UNITED STATES of America ex rel. Robert HARVIN, Appellant,**

v.

**Howard D. YEAGER, Warden, New Jersey State Prison.**

**No. 18136.**

United States Court of Appeals, Third Circuit.

Argued May 5, 1970.

Decided June 30, 1970.

John D. Schupper, Lowenstein, Sandler, Brochin & Kohl, Newark, N. J., for appellant.

Seymour Wishman, Asst. Prosecutor, Newark, N. J. (Joseph P. Lordi, Essex County Prosecutor, Newark, N. J., Robert L. Podvey, Asst. Prosecutor, on the brief), for appellee.

Before HASTIE, Chief Judge and MARIS and FREEDMAN, Circuit Judges.

## OPINION OF THE COURT

FREEDMAN, Circuit Judge.

Relator was convicted in December 1964 of second degree murder after a jury trial in the Essex County Court in New Jersey and sentenced to imprisonment for a term of 28 to 30 years. On direct appeal, the Supreme Court of New Jersey affirmed the conviction. State v. Harvin, 46 N.J. 151, 215 A.2d 352 (1965). Relator then sought federal habeas corpus in the district court of New Jersey which dismissed his petition.[1] His appeal is now before us.

Relator's first contention is that the statement he gave the police which was introduced in evidence at the trial over his objection was inadmissible under Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964), because he was without the assistance of counsel at his interrogation. His trial began after *Escobedo* was decided, but prior to the decision of Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and therefore the rule of *Escobedo* and not of *Miranda* applies. Johnson v. New Jersey, 384 U.S. 719, 732, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966).

The police testified that they told relator he had a right to have counsel present, but whether this be true or not, it is undenied that relator never specifically requested counsel.[2] In view

1. The district court's opinion, filed May 2, 1969, is unreported.

2. Indeed, at the argument on the use of his confession at the trial, relator's counsel acknowledged that *Escobedo* had no bearing on his case because he had made no request for counsel. He argued that the police were "gilding the lily" in tes-

of this, his claim of denial of the right to counsel must fail. We are not unmindful of the merit of the argument that a failure to ask for counsel is not meaningful where a defendant has no knowledge of such right.[3] But we reviewed the subject in Billingsley v. New Jersey, 408 F.2d 1181 (3 Cir. 1969) in the light of the Supreme Court's later decisions and held that "the rule of Escobedo can only be invoked by a defendant who has requested and been denied counsel. Since he did not request counsel, appellant cannot avail himself of Escobedo." (p. 1183)[4]

Relator also attacks his statement as involuntary and claims that it was the product of coercion by the police.

Relator was arrested on April 24, 1964, at about 10:30 p. m. and taken to police headquarters where he was booked for murder. After spending the night in jail he was interrogated by the police on April 25 from 12:05 to 1:05 p. m. and again from 3:15 to 4:35 p. m. No verbatim transcript was made of the interrogation, but at its conclusion a statement was prepared in question and answer form summarizing relator's responses. The statement was read to him and he made his mark at the end. It is undisputed that relator has a low grade mentality and can neither read nor write. A physician who examined him on behalf of the state testified that he is a low grade moron but has enough residual mental capacity to understand the nature and quality of his behavior.

Relator claims that he was threatened by the police shortly after his arrest, that he was not fed during the period of confinement before the statement was elicited and that his common-law wife was jailed without any charge made against her while he was being interrogated. He was kept in custody for almost a day before being taken to a magistrate. On the other hand, the period of detention from the time of his arrest to the signing of the statement, including a night's rest, was less than 24 hours. The interrogation itself lasted less than two hours. Neutralizing the claim of coercion is the indication in the record that relator cooperated fully with the police almost from the beginning of the questioning and that he does not challenge the accuracy of most of what is contained in the statement but instead contends that it is incomplete because it fails to recite all that he told the police. He admits the correctness of the statement that he shot the decedent, but claims that it fails to include his explanation that he had taken out his gun only in self-defense and that it went off accidentally.

The district judge, on a consideration of the "totality of the circumstances,"[5] decided that the statement was not involuntary. This decision was arrived at on the basis of the state court record, without an evidentiary hearing in the district court. These circumstances bring us to relator's final claim that the state trial court in admitting the statement into evidence failed to comply with the standard of Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964). If this claim is justified, the determination of the voluntariness of the statement should not have been made by the district court nor should it be

---

tifying that they told relator that he had a right to a lawyer when in fact his questioning had taken place before *Escobedo* and there was therefore no reason for them to have made any such statement.

3. See United States ex rel. Russo v. New Jersey, 351 F.2d 429 (3 Cir. 1965), vacated and remanded 384 U.S. 889, 86 S.Ct. 1914, 16 L.Ed.2d 995 (1966).

4. See also Frazier v. Cupp, 394 U.S. 731, 738–739, 89 S.Ct. 1420, 22 L.Ed.2d 684 (1969).

5. Frazier v. Cupp, 394 U.S. 731, 739, 89 S.Ct. 1420, 22 L.Ed.2d 684 (1969); Clewis v. Texas, 386 U.S. 707, 708, 87 S.Ct. 1338, 18 L.Ed.2d 423 (1967); Fikes v. Alabama, 352 U.S. 191, 197–198, 77 S.Ct. 281, 1 L.Ed.2d 246 (1957). See also Davis v. North Carolina, 384 U.S. 737, 740–741, 86 S.Ct. 1761, 16 L.Ed.2d 895 (1966).

made by us on the state court record but rather by the state court in a Jackson v. Denno hearing.

The trial court followed the practice then prevailing in New Jersey, which the Supreme Court later approved in Pinto v. Pierce, 389 U.S. 31, 88 S.Ct. 192, 19 L.Ed.2d 31 (1967), and in the presence of the jury heard the testimony relating to the making of the statement.[6] The trial judge then excused the jury and heard legal argument on the admission of the statement. Although counsel presented their views at length, no reference was made by either counsel or by the judge to Jackson v. Denno, which had been decided six months earlier. Counsel for relator referred to New Jersey decisions which he believed require a trial judge to determine initially the voluntariness of a confession.[7] The prosecutor, however, made it clear that in his view the duty of the trial judge was to admit the statement in evidence if a prima facie case of its validity had been made out, and that it would then be for the jury to determine, by judging the credibility of the witnesses, whether it was voluntarily given. "They"—the jury—"can judge of the credibility, not my adversary, not me and *not your Honor,*[8] as to whether this, in fact, was voluntary."[9]

After a short recess the trial judge announced his decision outside the hearing of the jury. He ruled that the statement was admissible and that it was the jury's function to determine its voluntariness. The judge's decision followed the channel marked out by the prosecution's view of his function. He distinguished between admissibility and voluntariness, limiting the trial judge to the determination, as the test of admissibility, whether the state had made out a prima facie case, and leaving it exclusively to the jury to determine whether the confession was in fact voluntary.[10]

---

6. As pointed out in *Pinto* at p. 32, 88 S.Ct. 192, 19 L.Ed.2d 31 n. 1, since 1967 the New Jersey practice has been changed and hearings on admissibility are to be held outside the presence of the jury if the defendant so requests. See State v. Broxton, 49 N.J. 373, 386, n. 2, 230 A.2d 489, 496, n. 2 (1967). See Rule 8(3) of the New Jersey Rules of Evidence.

7. State v. Tassiello, 39 N.J. 282, 188 A.2d 406 (1963); State v. Fauntleroy, 36 N.J. 379, 177 A.2d 762 (1962); State v. Smith, 32 N.J. 501, 558–560, 161 A.2d 520, 550–552 (1960) (concurring opinion by majority for the "future guidance of the trial bench"). But cf. State v. Loray, 41 N.J. 131, 195 A.2d 289 (1963).

8. Italics supplied.

9. "The question here to be determined is, should the Court admit the alleged statement of the defendant into evidence. *What must the Court find?*
   "One, *that there has been testimony offered by the State* that no physical violence was used *against the defendant* to compel him to give or sign the statement.
   "Two, that no threats were made against the defendant and,
   "Three, that no promises were made to compel the defendant to give or to sign this statement. * * *

"*The Court is to determine* under all of the circumstances *should the statement be admitted,* and if it is admitted it is still then the function and the proper function of the *jury* to determine,
   "One, was the statement given *voluntarily* and,
   "Two, is it the truth.
   "*They can judge of the credibility,* not my adversary, not me and *not your Honor,* as to whether this, in fact, was *voluntary.*" (Italics supplied.)

10. "After carefully considering it, all of the circumstances, and trying to keep in mind the fundamental fairness which was very ably expressed by Mr. Boylan [relator's counsel], *I think that in the circumstances of this case that the statement is admissible, believing, of course, as I will necessarily charge, it is their function to determine its voluntariness after they have had a chance to hear the defendant and his version of it.*
   "I was even a little bit *disturbed because some of his version of what happened got in,* but of course, it is not, in my humble judgment, prejudicial to him, so *I feel that it is admissible, but its voluntariness, that is the question of that, is one for the jury* and I will, therefore, deny the motion made by the defense counsel to keep it out, and I will grant your offer to have it admitted into evidence." (Italics supplied.)

It may be that in ruling that the statement was "admissible" the trial judge intended to conform to the principle of Jackson v. Denno. This view would have greater strength if the ruling had been announced in the presence of the jury, for its language then might be explained as an effort to keep from the jury any indication that the judge had passed on the voluntariness of the statement and thus avoid influencing them in making their determination[11] The ruling here, however, is too equivocal to meet the test required by Jackson v. Denno that there must be not only a "reliable" but also a "clear-cut" determination by the judge of the voluntariness of a confession, including the resolution of disputed facts upon which the voluntariness issue may depend. (Jackson v. Denno, 378 U.S. at 391, 84 S.Ct. 1774.) Even more clearly does the ruling fail to satisfy the requirement as it was later expressed in Sims v. Georgia, 385 U.S. 538, 87 S.Ct. 639, 17 L.Ed. 2d 593 (1967). There the trial judge, outside the hearing of the jury, admitted a confession into evidence on the ground that once the state had made out a prima facie case that the statement was voluntarily made, it was for the jury to determine on conflicting evidence whether it was voluntary. The Supreme Court, holding that the action of the trial judge violated the rule of Jackson v. Denno, said:

"A constitutional rule was laid down in [Jackson v. Denno] * * * that a jury is not to hear a confession unless and until the trial judge has determined that it was freely and voluntarily given. * * * [I]t is not for the jury to make the primary determination of the voluntariness. Although the judge need not make formal findings of fact or write an opinion, his conclusion that the confession is voluntary must appear from the record with unmistakable clarity." (p. 543–544. 87 S.Ct. at 643) [12]

A prima facie decision by the judge of the admissibility of the confession, therefore, does not comply with the requirement of Jackson v. Denno.[13] It leaves it open to doubt whether the trial judge followed the rejected New York procedure, under which the trial judge preliminarily screened the offered confession, excluding it only if in no circumstances could it be deemed voluntary. See Jackson v. Denno, 378 U.S. at 377, 84 S.Ct. 1774.

Since there is doubt whether the trial judge decided the question of the voluntariness of the statement, it follows that the record fails to show a "clearcut" determination which appears with "unmistakable clarity." The doubt must be resolved in favor of the relator, for to doubt, on this standard, is to deny.

█ Relator therefore is entitled to have a determination made of the voluntariness of the statement in accordance with Jackson v. Denno. We will accordingly reverse the judgment of the district court denying the petition for habeas corpus, and following the procedure in Jackson v. Denno [14] will remand the case to the district court to allow the state a reasonable time to afford relator a Jackson v. Denno hearing or a new

---

11. See State v. Smith, 32 N.J. 501, 161 A. 2d 520, 545–546 (1960) (opinion of Hall, J.).

12. Ellis v. Fitzharris, 407 F.2d 799, 800–801 (9 Cir. 1969); Javor v. United States, 403 F.2d 507, 509 (9 Cir. 1968); Smith v. Texas, 395 F.2d 958, 961 (5 Cir. 1968); Mullins v. United States, 382 F.2d 258, 262 (4 Cir. 1967); Fisher v. United States, 382 F.2d 31, 34 (5 Cir. 1967); Baker v. Colorado, 305 F.Supp. 154, 156 (D.Col.1969). See also Boles v. Steven-

son, 379 U.S. 43, 85 S.Ct. 174, 13 L.Ed. 2d 109 (1964).

13. See cases cited at note 12, especially Javor v. United States, 403 F.2d 507, 509–510 (9 Cir. 1968).

14. 378 U.S. at 395–396, 84 S.Ct. 1774. See Sims v. Georgia, 385 U.S. at 544, 87 S.Ct. 639. See also Boles v. Stevenson, 379 U.S. 43, 45–46, 85 S.Ct. 174 (1964); United States ex rel. Dickerson v. Rundle, 363 F.2d 126, 130 (3 Cir. 1966).

trial, failing which relator is entitled to his release. As we said in United States ex rel. Bennett v. Rundle, 419 F.2d 599, 609 (3 Cir. 1969), if on the new Jackson v. Denno hearing the New Jersey state courts should hold the statement inadmissible in evidence, it would follow that relator would be entitled to a new trial. If, on the other hand, they should hold the statement admissible, they may still consider the possibility of granting a new trial, especially if there is any substantial difference between the evidence presented at the new hearing and that which had been submitted to the jury at the trial.

The judgment of the district court, therefore, will be vacated with direction to order the grant of a writ of habeas corpus unless within a time fixed by the district court further proceedings are taken in the state court in accordance with this opinion.

MARIS, Circuit Judge (dissenting).

Chief Judge Augelli of the district court in his opinion in this case stated:

"After such testimony [on the issue of voluntariness of the relator's confession] was concluded, the jury was dismissed from the courtroom, and the judge heard argument, pro and con, on whether petitioner's statement was voluntary and admissible. He determined that it was. When the jury was returned the judge, in keeping with the teaching of State v. Smith, 32 N.J. 501, 549, 161 A.2d 520 (1960), made no disclosure to the jury of his finding, allowed the statement to be marked in evidence, and permitted it to be read to the jury. In his charge at the close of the case, the judge clearly instructed the jury that it was its function to determine whether the statement was voluntarily given, and that if the jury found to the contrary, it should be disregarded completely and no evidential weight whatsoever should be accorded to its contents."

I agree with Chief Judge Augelli that the judge at the relator's trial did decide that the confession was voluntarily given while at the same time submitting that question to the jury de novo, as required by the rule of Jackson v. Denno, 1964, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908. The judge's language was: "I think that in the circumstances of this case that the statement is admissible * * *" Since the relevancy of the confession needed no argument, the only substantial question of admissibility which was before the judge was its voluntariness "in the circumstances of this case". I am, therefore, satisfied that when the judge, after argument, ruled the confession admissible he was ruling that he found it to have been voluntarily given. Of course, he followed this ruling, as he was required to do, by a charge submitting the question of voluntariness to the jury de novo.

It should be remembered that Sims v. Georgia, 1967, 385 U.S. 538, 544, 87 S.Ct. 639, 17 L.Ed.2d 593, which held that the trial judge's finding of voluntariness "must appear from the record with unmistakable clarity" was not decided until more than two years after the relator's trial and the trial judge did not have the benefit of that decision. Here, I think it sufficiently appears that a finding of voluntariness was made by the trial judge. My brethren do not disagree with the district court, as I do not, that in the totality of the circumstances presented by the record the relator's statement was not in fact involuntary. But although the trial judge admitted the statement as voluntary they would reverse and remand in order to require the trial judge or some other New Jersey judge to repeat this finding "with unmistakable clarity". To me this is formalism without meaning. Believing that the trial judge complied in substance with the rule of Jackson v. Denno, I would affirm the order of the district court denying the relator's application for the writ of habeas corpus.